WILLIAM S. DOUGHTEN et al.

vs.

PETER B. VANDEVER et al., Executors of AMY DOUGHTEN, Deceased, et al.

New Castle, Feb. T. 1875.

*Charitable trusts; powers of court of chancery; doctrine of cy près; construction of wills; description of beneficiaries.*

1. Trusts for educational and religious purposes, and 'for the benefit of the poor, the sick, the afflicted, and the helpless, are charitable.

2. The doctrine of *cy près* has never been recognized in this State.

3. The court of chancery in this State has been accustomed to exercise only the judicial function of the English Court of Chancery; but the ordinary powers of a court of equity, applied properly to the subject-matter, are sufficient to carry into effect all charitable bequests reasonable in their character and proper in their objects.

4. It is a general rule in the construction of wills that the intention of the testator is to govern, but it is the intention expressed by the will.

5. If, in the matter of description, there is a mistake; that is, if there is no one who corresponds to the description in all particulars, but there is one who corresponds in many particulars, and no other who can be intended,—such person will take.

6. A difference in designation of the object of the testator's bounty, in a will, is not in itself sufficient to exclude a claimant from the benefit of a fund, if it answers the description of the bequest.

7. The material inquiry is, Is the description of the two—that is to say, the purpose, object, and the character of the two—the same, or so identical as to exclude the idea of uncertainty?

BILL FOR THE CONSTRUCTION AND ENFORCEMENT OF A WILL. —Amy Doughten, then of White Clay Creek Hundred, in New Castle County, in and by her last will and testament, dated the 2d day of November, 1846, among other things, bequeathed as follows:

"Item 7. I do give and bequeath to the trustees of the Deaf & Dumb Asylum of Philadelphia in the State of Pennsylvania, and their successors forever, the one-sixth part

of my estate, to be applied to the benefit of said institution or corporation.

"Item 8. I do give and bequeath to the trustees of the Widows' Asylum of Philadelphia in the State of Pennsylvania, and their successors forever, the one-sixth part of my estate, to be applied to the benefit of said institution or corporation.

"Item 9. I do give and bequeath to the trustees of the Orphans' Asylum of Philadelphia of the State of Pennsylvania, and their successors forever, the one-sixth part of my estate, to be applied to the benefit of said institution or corporation.

"Item 10. Having full confidence in the wisdom, integrity, and benevolence of the excellent gentlemen whom I shall hereafter appoint my executors, I do give and bequeath to them, my said executors, the rest and residue of my estate, to be distributed and disposed of among such charitable institutions and to and for such charitable purposes out of the State of Delaware as they, in their wisdom and benevolence, shall designate and select; and I do hereby give them full and perfect authority and power to select such objects of charity as to them seemeth fit and proper, subject only to the foregoing, viz.: That in selecting such objects of charity they must go out of the State of Delaware, and distribute and dispose of said residue accordingly, without let or hindrance from any person or persons whomsoever."

The testatrix appointed the Rev. Nicholas Patterson and Matthew Kean executors.

By the first item of her will she excludes her brother Isaac Doughten, and his heirs and descendants, from any portion of her estate.

By the second item she excludes her brother William Doughten and his heirs and descendants.

By the third item she in like manner excludes the heirs and descendants of her deceased sister, Elizabeth Wolston.

By the fourth item she in like manner excludes her brother John Doughten and his heirs and descendants.

By the fifth item she excludes her brother Benedict Doughten and his heirs and descendants.

On the 4th day of July, 1866, the testatrix made a codicil to her said last will and testament, in which she declares as follows:

"First. I hereby revoke and declare null and void the tenth item in my said last will and testament, and in lieu of the said devise therein contained I give and devise to my nephew Mordecai Doughten, with whom I now reside, the full sum of $1,000, and to his heirs and assigns forever, for the purpose of compensating him for his trouble in taking care of me whilst with him. I also give and devise to the wife of the said Mordecai, and his two daughters, Anna E. and Mary Jane, the sum of $100, to be equally divided amongst them, share and share alike; and to the said wife and daughters I also give and devise my bureau, bed, bedding, and bedstead.

"Second. All the residue of the three sixths of my estate, real, personal, and mixed, as contained or mentioned in the said tenth item of my said last will and testament, I give and bequeath to the trustees of the Marine Society of Philadelphia in the State of Pennsylvania, and to the trustees and managers of the Philadelphia Waterworks in the last-named State, to be equally divided amongst them, share and share alike, and to their successors in office forever, to be applied to the benefit of the said institutions or corporations."

By her codicil she appointed Peter B. Vandever, Benjamin S. Booth, and Thomas T. Enos, in lieu of her first-named executors, who had died.

The testatrix died on or about the 3d day of July, 1868. The will and codicil were admitted to probate, and letters testamentary were granted to the executors named in the codicil. Benjamin S. Booth never received, disbursed, or in any manner interfered with the estate of the testatrix or any part thereof. The estate was settled by Vandever and Enos, who passed separate final accounts thereon before the register on the 6th day of January, 1872. It appears by the account

of Enos that he was on that day indebted to the said estate in the sum of $3,296.14. It appears from Vandever's account that he was on that day indebted to said estate in the sum of $16,834.23; the said two sums aggregating the sum of $20,130.37.

Since the date of said settlement the Pennsylvania Institution for the Deaf & Dumb, a corporation of the State of Pennsylvania, located in the city of Philadelphia, claiming to be entitled to the legacy bequeathed in said will to the trustees of the Deaf & Dumb Asylum of Philadelphia in the State of Pennsylvania, recovered judgment in the Superior Court of the State of Delaware in and for New Castle County.

Since the recovery of said judgment, Vandever has paid to the said corporation—that is, to the Pennsylvania Institution for the Deaf & Dumb—the sum of $2,805.71, with its interest, less United States taxes, being one sixth of the balance remaining in his hands as aforesaid; and the said Thomas T. Enos has paid to the said corporation the sum of $540.36, with its interest, less United States taxes, being the one sixth of the balance remaining in his hands as executor aforesaid.

There is now due the estate of the testatrix from said Enos the sum of $2,746.78, with interest from the 6th day of January, 1872, and from the said Vandever the sum of $14,028.52, with interest from the same date.

The bill is filed by the heirs at law of Amy Doughten, claiming that there are no such persons, institutions, or corporations in the State of Pennsylvania as the trustees of the Widows' Asylum of Philadelphia in the State of Pennsylvania; the trustees of the Orphans' Asylum of Philadelphia in the State of Pennsylvania; the trustees of the Marine Society of Philadelphia in the State of Pennsylvania; the trustees or managers of the Philadelphia Waterworks in the last-named city,—the legatees named in the said last will and testament and codicil.

The bill alleges that the said legacies are void for misdescription or uncertainty, and prays that the defendants, Peter B. Vandever and Thomas T. Enos, respectively, may be de-

creed to pay to the complainants respectively their respective shares of the said undistributed balance so held by them as executors, with interest from the 6th day of January, 1872; which shares are stated in said bill.

To meet the objection that the bequests are void for uncertainty or misdescription, the claimants maintain that they are charitable in character, and therefore not subject to the same rules which apply to trusts of a private nature.

*C. B. Lore,* for the complainants:

1. The Chancellor of Great Britain exercises a twofold power : (1) a judicial power, sitting in chancery as a court of equity; (2) a prerogative power, representing the king as *parens patriæ.* 3 Bl. Com. 47, 427; 3 Kent, Com. 508, note *a; Fontain* v. *Ravenel,* 58 U. S. 17 How. 392 (15 L. ed. 90); 21 Curt. Dec. 565. The court of chancery in this State is clothed only with the judicial or equitable powers, except so far as extended by enactment of the General Assembly. 1700, jurisdiction of court of chancery defined, 1 Del. Laws, 130 ; 1792, June 12, Const. art. 6, § 14; chancery separated from common pleas; 1831, Dec., Const. art. 6, § 5.

2. The statute of 43 Elizabeth is not in force in Delaware. *State* v. *Wiltbank,* 2 Harrington, 18 (arguments of Frame and Clayton); *Philadelphia Baptist Asso.* v. *Hart,* 17 U. S. 4 Wheat. 1 (4 L. ed. 499) (4 Curt. Dec. 330); *Wheeler* v. *Smith,* 50 U. S. 9 How. 76 (13 L. ed. 53) (18 Curt. Dec. 33); *Fontain* v. *Ravenel,* 58 U. S. 17 How. 382 (15 L. ed. 85) (21 Curt. Dec. 555), overruling *Vidal* v. *Gerard,* 43 U. S. 2 How. 127 (11 L. ed. 205) (15 Curt. Dec. 61.)

3. If the statute of 43 Elizabeth is in force, the doctrine of *cy près* is not, and is totally repugnant to our form of government. *State* v. *Wiltbank,* 2 Harrington, 18; *Fontain* v. *Ravenel,* 58 U. S. 17 How. 369 (15 L. ed. 80) (21 Curt. Dec. 555); *Wright* v. *Linn,* 9 Pa. 433 ; *Methodist Church* v. *Remington,* 1 Watts, 226 ; 4 Kent, Com. 508, note *a;* 2 Kent, Com. 285–288.

4. The rule is : The legatee is to be so designated as to be

distinguished from every other person; otherwise the heir at law will take.  1 Jarm. Wills, Com. *330, and cases cited; *Bradshaw* v. *Bradshaw*, 2 Younge & C. 72; *Smith* v. *Smith*, 4 Paige, 271; *Atty-Gen.* v. *Sibthorp*, 2 Russ. & M. 107; *South Newmarket Meth. Sem.* v. *Peaslee*, 15 N. H. 317; *Wood* v. *Moore*, 4 Sandf. 537; *Winkley* v. *Kaime*, 32 N. H. 268; *Douglas* v. *Blackford*, 7 Md. 8; *Minot* v. *Boston Asylum & Farm for Indigent Boys*, 7 Met. 416; 2 Wms. Exrs. 1035,— and cases cited; *Kelley* v. *Kelley*, 25 Pa. 460; *Wootton* v. *Redd*, 12 Gratt. 196; *Thomas* v. *Thomas*, 6 T. R. 671.

*George M. Conarroe* and *William G. Whiteley*, for the Orphan Society of Philadelphia, the Indigent Widows and Single Women's Society of Philadelphia, and the Pennsylvania Seamen's Friend Society:

The present claimants do not rely on the doctrine of *cy près*. In the language of *Judge* Strong in *Cresson's App.* 30 Pa. 437: "It is not necessary to resort to it. . . . They rest upon the basis of the fulfillment of the direct purpose of the donor."

The following cases are applicable to the bequests claimed by them:

*Adams* v. *Jones*, 9 Hare, 484.  The question was whether, under this bequest, "I give to Clara Hannah Adams, the wife of Thomas Adams," etc., the wife of Thomas Adams, whose name was Hannah, or his daughter, whose name was Clara Hannah, was intended, or whether the gift was void for uncertainty.  Held, a good gift to the wife, the vice-chancellor saying: "A disposition cannot be avoided for uncertainty, if the court can arrive at a reasonable degree of certainty."

*Queen's College* v. *Sutton*, 12 Sim. 441.  A legacy was given to the "Provost & Fellows of Queen's College."  The proper name of the corporation was the Provost & Scholars. Held, that the Provost & Scholars were entitled, the former name being used in "common parlance."

*Wilson* v. *Squire*, 1 Younge & C. 654.  A legacy was given to the "London Orphan Society in the City Road." No institution precisely answered this description.  Held, that

the Orphan Working School in the City Road was en-titled.

*General Lying-in Hospital* v. *Knight*, 11 Eng. L. & Eq. 191. William Sandrack, by will dated January 31, 1850, gave legacies of stock to several charities, and, among them, said: "I give and bequeath unto the Westminster Asylum for Pregnant Women the sum of £500 from the 3 per cent reduced annuities." Testator died January 31, 1850. Claim was filed by the president, etc., of the General Lying-in Hospital of Westminster, against the executors, stating that they were a body corporate, etc. After argument the Master of the Rolls decided: "As there was no similar charity in Westminster, and the plaintiffs having at one time borne a name something similar, I think, without further arguing, I may declare that the General Lying-in Hospital was intended by the testator, and make a decree for the legacy and costs."

*Minot* v. *Boston Asylum & Farm for Indigent Boys*, 7 Met. 416. A testator gave a legacy to the "Boys' Asylum & Farm School," there being no institution or association of any similar name except the Boston Asylum & Farm School for Indigent Boys. Held, that this corporation was entitled to the legacy. The general rule is, that where either a corporation or a natural person is so identified by the name and description in the will, as applied to the facts and circumstances, as to distinguish such person or corporation from all others, such person or corporation shall take the bequest in the same manner as if no such discrepancy had appeared. Where the name and description in a legacy, when applied to the facts, lead to a reasonable belief that they apply to some one person, and there is no other person to whom they can with any probability apply, then much slighter evidence will be sufficient to prove that that person was intended.

*Tucker* v. *Seaman's Aid Society*, 7 Met. 188. The testator had left, in consequence of mistaken information, a legacy to the Seaman's Aid Society of Boston. It was claimed by the Seaman's Friend Society of New York and Boston. Shaw, *Ch. J.*, in a very learned opinion, says: "The Seaman's

Friend Society, either of New York or Boston, cannot take, because the name and description are not those by which they have ever acted or been known or designated; and because the Seaman's Aid Society is the one precisely named and described in the will. Had there been but one charitable society established for the relief and benefit of seamen, and that one the Seaman's Friend Society, the evidence to be derived from the facts and circumstances, combined with a name very near the one mentioned in the will, and a description indicating the purposes to which the gift was devoted, in the absence of any other claim on the part of any similar society, would have been very strong, without direct proof of intention, to show that the Seaman's Friend Society was intended; and, if so, they would be entitled to take the legacy by the established rules of law." Again, referring to this case, in 7 Met. 419, *Chief Justice* Shaw says: "So, in the case of the Seaman's Aid Society, had there not been a corporation by the name of the Seaman's Aid Society, nor any other of a similar name or description, the Seaman's Friend Society would have been sufficiently identified and designated to enable them to take the bequest."

A court never construes a devise void unless it is so absolutely dark that they cannot find out the testator's meaning. 1 Atk. 411; Pow. Dev. 421.

*Button* v. *American Tract Society*, 23 Vt. 349. A devise to "the American Home Mission Tract Society" was held a good devise to the American Tract Society, the court saying: "The description of the devisee in the will contains all the words which constituted the name of the tract society. It does, indeed, contain other terms, but those are not inapplicable to, but are descriptive of, the American Tract Society. The terms used by the testator are applicable to and will describe the American Tract Society, and there is no other society, that we are aware of, to which all the terms are applicable."

*Brewster* v. *McCall*, 15 Conn. 276, 292. Bequest to "the Missionary Society of Foreign Missions" was held a good

bequest to the American Board of Commissioners for Foreign Missions. The court says: "It is, however, insisted that in this case the evidence proves that there is no such corporation or society in existence as the Missionary Society of Foreign Missions, and therefore the devise is inoperative. If, indeed, there were no society in existence, either of this name or description, the devise would be void for the want of any person to take under it. If, however, there is a corporation of either that name or description, and only one, we think there cannot be a doubt that it would take under this devise. Under the circumstances of this case the devise must be deemed to be made to that society by description, and not by name."

*McBride* v. *Elmer*, 2 Halst. 107. Devise to "the Bridgeton Trustees for Free Schools." There were no such trustees, and the only free schools in Bridgeton were called public schools. Held, a good devise to be executed, and trustees were appointed.

*Pepper's Will*, 1 Pars. Eq. Cas. 436. The law of charitable uses has always formed a part of the Civil Code of Pennsylvania. The statute of 43 Elizabeth as a statute has never been adopted in this State; but its conservative provisions have been in force here by common usage and constitutional provision,—not only so, but the more extensive range of charitable uses which chancery sustained before the statute of Elizabeth, and even beyond it. The statute of 9 Geo. II. never was in force in Pennsylvania, and consequently the law of charitable uses here stands unaffected by it. The courts of equity in this State will not hesitate in supplying any formal defect in the execution of a power by will, in favor of a charity.

*Domestic & F. Miss. Society's Appeal*, 30 Pa. 425. A legacy to "the Missions and Schools of the Episcopal Church about to be established at or near Port Cresson," upon the western coast of Africa, is a good charitable bequest to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church of the United States of America. When it is remembered that this legacy to the "Mission and Schools of the

Episcopal Church" is a charitable bequest, it certainly cannot be successfully contended that it is void because it does not sufficiently designate the persons for whom the testator intended the beneficial use of the $5,000. In such gifts, beneficiaries have been held to be sufficiently described in numerous cases still more indefinite. They have been sustained in England in the following cases amongst others: a gift to the poor in general (2 Lev. 167; Finch, 245); a bequest for the advancement of religion (1 Mol. 616); a gift to such charitable uses as A shall appoint (1 Ves. Jr. 464; 7 Ves. 36); a bequest to a particular charity by a description equally applicable to two, and it is wholly uncertain which was intended (1 P. Wms. 674; 5 Russ. 112). These, and numerous other cases of a similar character, are collected by Mr. Jarman. They are all cases in which, as ordinary testamentary dispositions, the legacies would be held void; but as charities they are valid.

Our American books are equally full of similar adjudications. In 27 U. S. 2 Pet. 578 (7 L. ed. 526), land marked, in the plan of a town, "for the Lutheran Church," for religious purposes, was held a good charity without any other description of donees or uses. In *Witman* v. *Lex*, 17 Serg. & R. 88, a legacy was given to "the poor of the Lutheran congregation." It was held good. In the same case a legacy, the interest of which was to be applied from time to time to the education of young men in the ministry of a congregation under the direction of the vestry, was sustained. So, a bequest "for the relief of the indigent, blind, and lame, giving a preference to those resident in Philadelphia and its neighborhood" (3 Rawle, 170), was held valid. So, also, in *Pickering* v. *Shotwell*, 10 Pa. 23, a devise to an unincorporated religious society, "to be applied as a fund for the distribution of good books among poor people in the back parts of Pennsylvania, or to the support of an institution or free school in or near Philadelphia," was maintained as a good charitable gift. 13 U. S. 9 Cranch, 296 (3 L. ed. 737); 28 U. S. 3 Pet. 99 (7 L. ed. 617); *Magill* v. *Brown*, Brightly, 347.

A bequest to a school has been held to be a gift to a schoolmaster; one to a church, a gift to the parson and his successors; one to parishioners, a gift to churchwardens. 11 Hen. IV. 84 *b;* 37 Hen. VI. 30; 13 U. S. 9 Cranch, 292 (3 L. ed. 735). *Reading* v. *Lane,* cited in Toth. 7 (cited by *Judge* Gibson, 17 Serg. & R. 91), where a devise was made to the poor people in the hospital of St. Leonard's, it was decreed that, as the plaintiffs governed the hospital, the land should be assured to them for the use declared in the will.

The law regards the substance of the gift, and in favor of charity vests it in the party capable of taking it (13 U. S. 9 Cranch, 329, 3 L. ed. 748); the object being to effectuate the intent of the testator rather than let it fail. It is true the doctrine of *cy près* is not fully adopted in this State. It is not necessary to resort to it. The cases above cited were not decided upon that principle. They rest upon the basis of a fulfillment of the direct purpose of the donor. They are not judicial appointments of trustees to prevent the failure of a trust.

*Cresson's App.* 30 Pa. 437. A bequest to the "Pennsylvania Agricultural Society" was held a good bequest to the Pennsylvania State Agricultural Society; and a bequest to the "Refuge for Decayed Merchants" was held to be intended for a charitable society incorporated under the name of The Merchants' Fund.

*Vernon* v. *Fisher,* 1 Brightly, 420. Now if there is any one thing more abhorrent than all others in the interpretation of last wills and testaments, it is the necessity of pronouncing a devise void; "for a devise is never construed absolutely void for uncertainty, but from necessity." To prevent this, every effort is to be made to extract the purpose and design of the testator from all and every part of his will; and if there be a possibility to reduce it to a certainty, the devise is good; "for the testator must be taken to mean something," says *Lord Chancellor* Cowper; "nor must the words of the will be void, if they can have effect by reasonable construction." 1 Atk. 411; 4 Bac. Abr. 334.

The early law of Pennsylvania and Delaware was identical. Both were for many years under the same proprietary government, and the decisions in each have long been harmonious. There is nothing whatever in the Constitution or laws of Delaware, or the decisions of her courts, which conflicts in the slightest degree with the principles laid down in the foregoing cases.

*John O'Byrne*, for the City of Philadelphia:

In this case the legatees are not misnamed. In fact the city of Philadelphia is and always has been the manager of the Philadelphia Waterworks. The city acts through its councils and its committee of councils on water. The case of *Vidal* v. *Girard*, 43 U. S. 2 How. 127 (11 L. ed. 205), settled the right of the city to act as trustee for a charitable bequest. In that case it was held " that the corporation of the city of Philadelphia has power, under its charter, to take real and personal estate by deed, and also by devise, inasmuch as the Act of 32 & 34 Hen. VIII., which exempts corporations from taking by devise, is not in force in Pennsylvania;" and that " where a corporation has this power it may also take and hold property in trust in the same manner and to the same extent that a private person may do." There are no private waterworks in Philadelphia, and no one could possibly have any doubt as to the particular object of bounty designated by the testatrix. That a bequest for waterworks is one for a charitable use was expressly held in *Jones* v. *Williams*, Amb. 651, by *Lord Chancellor* Camden. See also, as to cases of misnomer, *Thomas* v. *Stevens*, 4 Johns. Ch. 607; *St. Louis Hospital Asso.* v. *Williams*, 19 Mo. 609; *South Newmarket Meth. Sem.* v. *Peaslee*, 15 N. H. 317; *River's Case*, 1 Atk. 410. The cases cited by counsel for the Widows' and Orphans' societies are also referred to as governing the bequest to the Philadelphia Waterworks.

The Chancellor.—I shall attempt no enumeration of the various gifts which have been declared charitable. It is

only necessary to remark that trusts for religious and educational purposes, and for the benefit of the poor, the sick, the afflicted, the helpless, are charitable. They are governed by the rules that apply to trusts for private benefit. The intention of the donor is ascertained by the application of the same rules of construction. Where, however, it is plain that a public charity is intended, different rules from those applied to private trusts may be invoked in order to give effect to the intention of the donor, and to establish the charity. A public charity will not fail by reason of the fact that the trustee is uncertain, or is incapable of taking, or that the objects of the charity are uncertain and indefinite. These, however, would be fatal to gifts for private benefit. The greatest favor has for many centuries been shown by those who make and administer the laws to gifts for public charities. This favor is clearly discernible in the history of Roman legislation and jurisprudence. Writers on the civil law furnish the clearest evidence of the peculiar regard in which testaments for charitable purposes were held.

We all know how favorably gifts for charitable uses were regarded by the early English law. Prior to the enactment of the Statute of Distributions (22 Car. II. chap. 13), the ordinary was obliged to apply a portion of the residue of every intestate estate to charity, on the ground that there was a general principle of piety and charity in every man, or that every man must be presumed to have intended a portion of his goods for the benefit of charity. In 1601 the Statute of 34 Elizabeth, chap. 4, commonly called the Statute of Charitable Uses, was enacted. It is unnecessary to consider the provisions of this statute, or the objects sought to be accomplished by its enactment. I can find no evidence that it has ever been recognized as in force in this State. It is true that we derive our system of equity jurisprudence from that of England ; but they err who suppose that the jurisdiction of the English Court of Chancery over charities or charitable bequests owed its origin to the provisions of that statute. It is now fully established that the chancellor of England had

·and exercised jurisdiction over charities and charitable uses long before that statute. That jurisdiction was of two distinct characters,—ministerial and judicial. The king, as *parens patriæ,* had the administration of all charities. The judicial part of this administration was entrusted to the ordinary equity jurisdiction of the court of chancery. The part not thus entrusted the king exercised, as part of his prerogative, by his sign manual. This latter part, however, was generally administered by the chancellor, representing the king as *parens patriæ.* The ministerial function of the chancellor was exercised in cases not cognizable by him acting solely in his judicial capacity. Of this class of cases may be mentioned gifts made for charitable uses that were illegal or ·contrary to public policy, or that were impossible to be carried into effect, or in cases of charity generally, or to religion or education, without directions when, where, or by whom the gift should be applied or used.

The principle or doctrine of the exercise of this ministerial function of the English chancellor was what is known as *cy près;* that is to say, where there was a definite charitable purpose which could not take place, the court would substitute another, and formerly of a very different character. It was not, however, in the exercise of the judicial function of his office, but in the exercise of his ministerial function, that the English chancellor applied the fund to a different purpose from that contemplated by the testator, provided it was charitable. It has been well remarked that "most of the cases carry the doctrine beyond what is allowed where private interests are concerned, and have in no inconsiderable degree to draw for their support on the prerogative of the Crown and the Statute of Charitable Uses." 43 Eliz. chap. 4. The doctrine of *cy près* has never been recognized in this State. Our court of chancery has been accustomed to exercise only the ordinary or judicial function of the English Court of Chancery; and it is believed that the ordinary powers of a court of equity, applied properly to the subject-matter, are sufficient to carry into effect all charitable bequests reason-

able in their character and proper in their objects. While, under our system of equity jurisprudence, charitable bequests to be administered only *cy près* cannot be sustained, chancery here, as in England, in the exercise of its judicial functions,—here it possesses no other,—will sustain bequests in favor of charity not in contravention of law or public policy and that are capable of being carried into effect by the exercise of the judicial power vested in the court; and where a testator has clearly indicated when, where, how, and by whom his gifts are to be applied or used ; and also in all cases of such charities in which nothing is wanting for their application but a trustee. In the latter case chancery will not allow an otherwise proper trust to fail for want of a trustee, but will supply that want.

What is a charity, a charitable use, a public charity ? In the case in Ambler to which reference will be hereafter made, this definition is given : "A gift to a general public use which extends to the poor as well as the rich."

In *Jackson* v. *Phillips*, 14 Allen, 556, *Justice* Gray says: "A charity, in a legal sense, may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature."

These general principles, applicable to public charities, seem sufficiently established by equity decisions. It is immaterial whether the person to take be *in esse* or not, or whether the legatee were at the time of the bequest a corporation capable of taking or not, or how uncertain the objects may be, provided there be a discretionary power vested anywhere over the application of the testator's bounty to those objects, or whether the corporate designation has been mistaken. If

the intention sufficiently appears on the bequest, it will be held valid. *Witman* v. *Lex*, 17 Serg. & R. 88.

The general rule is that where either a corporation or a natural person is so identified by the name and description in the will, as applied to the facts and circumstances, as to distinguish such person or corporation from all others, such person or corporation shall take the bequest in the same manner as if no discrepancy had appeared. *Minot* v. *Boston Asylum*, 7 Met. 418.

Where the name and description in a legacy, when applied to the facts, lead to a reasonable belief that they apply to some one person, and there is no other person to whom they can with any probability apply, then much slighter evidence will be sufficient to prove that that person was intended in the designation. *Ibid.*

The general rule certainly is that the intent of the testator is to govern in the construction, but it is the intention expressed by the will and not otherwise. To get at the intention expressed by the will, every clause and word are to be taken into consideration, because one clause is often modified and explained by another. Every implication, as well as every direct provision, is to be regarded. And further, as a will must necessarily apply to persons and things external, any evidence may be given of facts and circumstances which have any tendency to give effect and operation to the words of the will; such as the names, descriptions, and designations of persons, the relations in which they stood to the testator, the facts of his life, etc. If in the matter of description there is a mistake,—that is, if there is no one who corresponds to the description in all particulars, but there is one who corresponds in many particulars, and no other who can be intended,—such person will take. *Ibid.*

If the will applies definitely to two or more persons, so that either would be entitled to take under the will but for the existence and claim of the other, then parol evidence is admissible to prove which was intended. When that proof is supplied, the will operates, by its own force and terms, to give the property to that one, as if such person had been the

only one named or described. The evidence does not create the gift, but simply directs it. When the name or description used in the will does not designate with precision any person; but, when the circumstances come to be proved, so many of them concur as to indicate that a particular person was intended, and no similar conclusive circumstances appear to distinguish and identify any other person,—the person thus shown to be intended will take.

W, by will, among other legacies, bequeathed as follows: "To the Marine Bible Society I give $1,000." There was no such society at the date of the will or at the time of its probate. There had existed some time previously a society by the name of the Boston Young Men's Marine Bible Society, which had been dissolved or become extinct before the death of the testator, the meetings of which he had, during his lifetime, occasionally attended, and to the funds of which he had contributed. The court says: "This misdescription is a slight one. There is no other society claiming to be the society intended under this description, and there are various facts introduced and tending to identify this society as the one designated by the testator to receive this legacy. If a testator errs in the name of the legatee, but sufficiently identifies the person or corporation, such error does not defeat the legacy." Swinb. Wills, pt. 7, § 5.

Where legatees are mentioned in a will by names which they never in point of fact had, yet they will take upon its being proved that the testator intended them. *Winslow* v. *Cummings*, 3 Cush. 362, 363.

A leading case — or one that is entitled to be considered such on account of the eminence of the judge announcing the opinion — upon the subject of charitable bequests, and of a recent date, is that of *Domestic & F. Miss. Society's Appeal*, 30 Pa. 425, as is also that of *Cresson's Appeal*, Id. 437. The former case decides that a legacy to the missions and schools of the Episcopal church about to be established at or near Port Cresson upon the western coast of Africa is a good charitable bequest to the Domestic & Foreign Missionary

Society of the Protestant Episcopal Church of the United. States of America, by whom the mission at Port Cresson was established, and upon whom it is dependent for support; and. that in case of a charitable bequest it is immaterial how vague,. indefinite, and uncertain the objects of the testator's bounty may be, provided there is a discretionary power vested in. someone over its application ; that the law regards the sub-- stance of the gift, and, in favor of charity, vests it in the party capable of taking it, in whose ease it was given; and that parol evidence is receivable to show the situation in which the testator stood towards the objects of his charity, and to designate who were intended by the will to be the recipients of his bounty.

In the latter case parol evidence was received to show that. a bequest to the "Refuge for Decayed Merchants" was. intended for a charitable society incorporated under the name of the Merchants' Fund.

I shall attempt no enumeration of the objects which have been adjudged charitable. They are almost innumerable. It is not necessary to do so in this case. If the legatees under this will are designated with sufficient accuracy, and if the objects of the testatrix's bounty are sufficiently ascertained, or are capable of being ascertained, so that the bequests may be beneficially applied, there can be no question as to the charitable nature of the bequests, except as to the bequest to the "trustees or managers of the Philadelphia Waterworks." This bequest must fail. The Philadelphia Waterworks are not a public charity. The bequest is not good at common law, because there is no such corporation as the Trustees or Managers of the Philadelphia Waterworks, and there are no fiduciary managers of said works. The only managers of the works are its legal owner, the city of Philadelphia, and it is not to be presumed that the corporation styled the City of Philadelphia was intended to be the object of the testatrix's bounty. Trustees are never intended as the beneficial objects of bounty. They are intended as the fiduciaries for others than themselves. They control and manage interests or estates,

not for their personal benefit, but for the benefit of others. In this bequest the words "trustees" and "managers" were intended to have substantially the same signification, and were intended to describe persons acting in fiduciary relations. The city of Philadelphia sustains no such relation either to the waterworks or to the persons using the water supplied by them. The city is the absolute owner of the works; it manages the works as its other property, and taxes the property-holders of the city for the use of the water supplied to them. The case of *Jones* v. *Williams*, Amb. 651, does not support the city's claim in this case. In that case, John Williams, by his will, taking notice that the town of Chepstow was much in want of good spring water, and that there was a subscription some time since set on foot for bringing the same to the town, but by some misunderstanding was dropped, gives £1,000, to arise by a sale of his real estate, for the purpose of bringing spring water from St. Arvins, or elsewhere, to the town of Chepstow, for the use of the inhabitants forever, which is to be laid out by his trustees and executors in bringing the said water to the said town and making conduits and reservoirs; and gives £200, if wanting, and directs a sum to be left in the Bank of England, or an estate bought with it, which will bring in £10 a year, to keep the waterworks in good order. Clearly this was a gift for a charity. It was, says the court, a gift for a general public use, which extended to the poor as well as the rich. No money was exacted for the use of the water. No tax was imposed in order to furnish the supply. The testator's estate was to receive no return in consideration of his bounty. The testator furnished the water freely for the use of all the inhabitants of Chepstow. The city of Philadelphia does not furnish, by means of her waterworks, water to the inhabitants of that city, to the poor as well as to the rich, freely and without charge, and is not, therefore, in this respect, the object of a charitable bequest. A corporation owned by the State, and supported by a public tax or from government funds, is not the object of a charitable bequest, nor would a corporation belonging to a city, nor a corporation

owned by private individuals for supplying any article, how-- ever necessary, for which supply a compensation was de- manded, be the object of a charitable bequest. The Phila- delphia Waterworks are simply property belonging to the city,. and are no more a public charity than a horse or a street car,. or a fire engine owned, controlled, and managed by the city.. I therefore decide that the bequest in the testatrix's will to· the trustees and managers of the Philadelphia Waterworks is. invalid.

In view of the principles hereinbefore stated, and the deci- sions hereinbefore referred to, do the Orphan Society of' Philadelphia, the Indigent Widows' and Single Women's So- ciety, and the Pennsylvania Seamen's Friend Society, answer with sufficient certainty in designation or description the: objects intended by the testatrix, in her will and codicil thereto, as the "trustees of the Orphans' Asylum of Philadelphia in: the State of Pennsylvania;" the "trustees of the Widows' Asy- lum of Philadelphia in the State of Pennsylvania," and the· "trustees of the Marine Society of Philadelphia in the State of Pennsylvania?"

I will first consider the claim of the Orphan Society of Philadelphia to the bequest made in the will to the "trustees of the Orphans' Asylum of Philadelphia in the State of Penn- sylvania." The designation of the asylum mentioned in the will, and that of the society claiming the fund, is not in all respects the same. The latter takes under a devise or bequest,. not to trustees, but directly in its corporate name, which is the· Orphan Society of Philadelphia. If otherwise entitled to the benefit of the fund, the bequest to the trustees instead of' to the corporation direct in its corporate name would not, in my opinion, be fatal to the claim. It would in either case be the corporation intended to be benefited, and not the rep- resentatives of the corporation. Two things are certain from the consideration of this will, viz. : the testatrix meant that none of her heirs at law should derive any benefit from her estate, and that her estate should be applied to what she con_ sidered public charities; and she has attempted to designate

corporate agencies through which her charity should be administered. If she really meant the corporations claiming, and there be sufficient proof in the case, either from inspection of the will or otherwise, her intention must prevail notwithstanding a mistake in their designation. I do not regard the difference in designation in itself as sufficient to exclude the claimant from the benefit of the fund if it answers the description of the bequest. The material inquiry is, Is the description of the two— that is to say, is the purpose, object, and character of the two—the same, or so identical as to exclude the idea of uncertainty? The testatrix intended to make an incorporated institution, the object and purpose of which was to benefit or support orphans, her agent in the distribution of her bounty for the benefit or support of orphans. An asylum may be a society, and a society may be an asylum. It is the thing, the corporate being, and not the name of the thing or corporate being, which is material. It is in proof that the claimant was commonly called the Orphans' Asylum, and it is conceived that there cannot be, in reason, any material distinction between an orphan asylum and an orphan society, when either is regarded or spoken of or meant to be described as an institution for the protection or relief of the unfortunate ; and this is one of the definitions of an " asylum," given by Webster, with examples, as an asylum for the poor, for the deaf and dumb, and, he might have added, for orphans.

An incorporated society is an institution. It may be for many purposes. It may be for business, for religious or charitable objects. The purposes for which it is established or instituted will determine its character. If it is a society for orphans, or an orphan society, the general usage, as well as the proper understanding of the term, would determine its character as that of a society for the protection or relief of orphans. An orphan asylum has no other character; nothing else is descriptive of it. There is no orphan asylum in Philadelphia whose corporate name answers the designation in the testatrix's will nearer than—or as near, in my opinion, as—that of the Orphan Society of Philadelphia. I doubt if there are any an-

swering the description so near. The few other orphan asylums referred to in the cause appear to be denominational or class in character. It would have been more satisfactory, if it could have been done, had proof been made that the testatrix had personal knowledge of some particular institution for the benefit of orphans. The omission of this proof, however, ought not to be considered as evidence that she had no knowledge or information of any institution of that character in the city of Philadelphia, and of the orphan society in particular. That which was generally known among the friends of the institution may have been known to her personally, and the institution therefore may have been designated by her by its popular rather than by its corporate name. In her extreme want of charity towards her relatives, in not providing for " those of her own house,"—which high authority has declared to be worse than infidelity,—she seems, nevertheless, to have wished to devote her estate to objects which she considered charitable. There is no other claimant to this bequest, although, by order of the court, publication of notice to all corporations desiring to claim the same has been made in a paper called the Legal Intelligencer, published in the city of Philadelphia. Considering the length to which courts have gone in order to establish charitable bequests, and that, if the claim of the Orphan Society of Philadelphia is disallowed, the bequest of the testatrix for the benefit of orphans must fail,—whatever may be my private opinion of the propriety and wisdom of the action of the testatrix in disposing of her property as she has done by her will, as a judge, recognizing the decisions of courts in analogous cases, I am constrained to give effect to this bequest, and to decide in favor of the claim thereto made by the Orphan Society of Philadelphia.

The same reasoning will apply to the claim of the Pennsylvania Seamen's Friend Society. Its designation is not that employed by the testatrix in her will. There is little in common between them; the one is the trustees of the Marine Society of Philadelphia, and the other is the Pennsylvania Seamen's Friend Society. There is no society or asylum in

Philadelphia answering the designation in the will. It is, however, evident from the will itself that the testatrix meant, by her bequest to the trustees of the Marine Society of Philadelphia, a bequest for the benefit, protection, or support of mariners. Does the Pennsylvania Seamen's Friend Society sufficiently answer the description of a marine society, and such a marine society as the testatrix meant; and did she mean it? If it does not so answer, and if she did not mean it, her bequest to the "trustees of the Marine Society of Philadelphia" must fail; for there is no other claimant to it, and there is no other society proved to exist that can take the bequest. Webster defines the word "marine," as an adjective, pertaining to the sea, transacted at sea. "Marine," as a noun, he defines to be a soldier that serves on board of a ship and fights in naval engagements. He defines marines to be a body of troops trained to do military service on board of ships. Also the whole navy of a kingdom or state. Again, the whole economy of naval affairs, comprehending the building, rigging, equipping, navigating, and management of ships of war in engagements. He defines "a mariner" to be a seaman or sailor,—one whose occupation is to assist in navigating ships. He defines "a seaman" to be a sailor, a mariner,—a man whose occupation is to assist in the management of ships at sea. He says naval skill is the art of managing a fleet, particularly in an engagement; "a very different thing from seamanship. Nothing is more common than to speak of our naval marine and our commercial marine." The term "marine" is not exclusively appropriate to either. It is common to both. It will be observed that the object of the testatrix was to bestow a charity, the recipients of which should be mariners. All the other institutions or societies mentioned or referred to in this cause, having any relation to or connection with the terms "marine" or "seamen," were either governmental or beneficial, and cannot therefore be considered as objects for charitable bequests or public charities. Section 2 of the charter of the Pennsylvania Seamen's Friend Society is as follows:

"§ 2. The object of this corporation is to promote the social and moral improvement of seamen at home or abroad."

It is therefore a charitable corporation or institution. Now,. although the designation of the Pennsylvania Seamen's Friend Society is not the same as that used by the testatrix in the codicil to her will, to wit, the trustees of the Marine Society of Philadelphia in the State of Pennsylvania,—yet, as there is no other claimant of the bequest, nor any other institution in Philadelphia of a charitable character answering to the description of a marine asylum, which must mean an asylum or society for the benefit, protection, or support of mariners. or seamen, whether naval or commercial; and as it appears. from the charter and the reports of the Pennsylvania Seamen's Friend Society that it does meet the description of a marine asylum,—that is, that it is an institution for the benefit. of mariners or seamen; and inasmuch as a court of equity will not allow a charity to fail if it can reasonably be applied,— I am of opinion, notwithstanding the absence of proof of any general or special knowledge on the part of the testatrix of the existence of the Pennsylvania Seamen's Friend Society,. that said society is entitled to the bequest, in the codicil, to the "trustees of the Marine Society of Philadelphia in the State of Pennsylvania."

The evidence discloses the existence of no institution or corporation in the city of Philadelphia answering the designation of the Widows' Asylum of Philadelphia in the State of Pennsylvania. The name of St. Ann Widows' Asylum. appears in one of the directories of the city of Philadelphia, made one of the exhibits in this cause. Nothing is known of it, however, from the evidence, other than its name, which would seem to indicate that it is denominational in character. It is not a claimant of the bequest. In a list of some of the benevolent institutions of the city of Philadelphia, made an exhibit in the cause, there appears to be in that city an institution the corporate name of which is Penn Asylum for Indigent Widows and Single Women of the City of Philadelphia,. which was incorporated in the year 1852, six years after the

will was made which contains the bequest.  Of course the testatrix could not intend this corporation, and it has not appeared and claimed the bequest.  The Indigent Widows and Single Women's Society, incorporated in 1819, is the only charitable institution or corporation that has appeared and claimed the bequest to the trustees of the Widows' Asylum of Philadelphia in the State of Pennsylvania.  James Bayard, a witness examined in the cause, speaking of the claimant, says : " I am well acquainted with the Indigent Widows and Single Women's Asylum of Philadelphia,—have known it about fifty years."  He also says : " In common parlance this institution was called the Widows' Asylum.  Unless it was for some specific business purposes, I never heard it called by the corporate name in common parlance."  He also states that single women were admitted into the institution, and that single women had as much right as widows ; that it was not exclusively a widows' society ; that he could not say what proportion of single women and widows had been admitted at any time since its institution ; and that its charity extended as well to single women as widows.  He also states that members of his family and intimate friends were managers of the institution, and that the name given it by his family and friends in common conversation was the Widows' Asylum.  The rule for the application of charities is that, where a charity is given to any object by special designation or description, and that designation or description equally applies to two or more objects, the charity will fail from the want of certainty as to the particular object intended ; but that which would be otherwise uncertain in such a case may be rendered reasonably or absolutely certain by parol evidence indicating the particular charity intended.  Of this description of evidence would be the proof of the testator's relation to the particular institution, if an institution be the object of the charity; the name by which one of the institutions, if there were more than one claiming, was commonly called; and any other circumstance tending to show the particular charity intended.  In the forty-seventh annual report of the managers of the Indigent Widows and

Single Women's Society, for the year 1863, which I find among the exhibits in the cause, is the following : " The storm which has broken over our unhappy country has as yet been unfelt within the walls of the society's asylum." Again : " Most of the applicants are deserving gentlewomen, who have fallen into poverty in the decline of life, and whose education has taught them to shrink from dependence on individual charity." In their twenty-eighth annual report, for the year 1844, is the following : " This society is founded for the relief of aged and indigent women. It recognizes no sectarian preferences. The only requisites for participation in its charities are advanced age, destitution, and meritorious character." Again : " It is especially designed to provide an asylum for those whose earlier lives have been passed in the more refined walks of life, and whom experience therefore has not inured to the struggle of penury." As the testatrix, in her bequest to the trustees of the Orphans' Asylum of Philadelphia, must have meant to bestow a charity upon orphans, and in her bequest to the Marine Asylum of Philadelphia must have meant to bestow a charity for the benefit of seamen, so in her bequest to the Widows' Asylum of Philadelphia she must have intended a charity in favor of widows. The society claiming the bequest does not answer the designation of the asylum mentioned in the will ; but the charity answers the description of the charity intended by the will, unless the participation of single women in the charity administered by the claimant renders the description dissimilar. I cannot suppose that a charity including that mentioned in the will, but more extensive in its benefits, and extended to an equally meritorious class of persons of destitute condition, especially as the charity is or may be given to the corporation by its popular, and not its corporate, designation, can have that effect. For these and the additional reasons assigned in reference to the other charitable bequests hereinbefore considered, I shall decree the Indigent Widows and Single Women's Society of Philadelphia entitled to the bequest to the " trustees of the Widows' Asylum of the city of Philadelphia in the State of Pennsylvania."

I have not overlooked the fact that each one of these bequests to intended charitable institutions has been directed, in the will and codicil, to be applied to the institutions or corporations respectively. This form of bequest, however, I regard as no more or less than a direction that the benefits of the bequests shall be enjoyed by the classes of persons respectively for whose benefit those institutions or corporations exist.

I am aware that I have in this opinion gone quite far enough in the application of well-recognized equitable principles to charitable uses. It would not have been a matter of regret to me if I had been able to arrive at different conclusions. There is nothing in the will of Amy Doughten, with respect to these charitable bequests, at the expense of her relatives in blood, that meets the approval of my judgment. Her example in this respect I would not commend as worthy of imitation ; and nothing but a sense of duty, which compels me to follow the law as expounded by courts of equity, has caused me to give an interpretation to the provisions of her will and the codicil thereto by which her heirs at law are excluded from the benefit of sharing her estate.