Matthew D. Murphy, personally, as Executor of the Last Will and Testament of Michael McCartney, deceased, and as Executor of the Last Will and Testament of Adaline M. Mc-Cartney, deceased, Sisters of Charity of St. Peter's School, Incorporated, a corporation existing under the laws of the State of Delaware, and Jane Lorgan,

Defendants below, Appellants,

*vs.*

Mary E. McBride, Catherine McBride, Catherine Morley Julia O'Connell, Margaret Libbey, Elizabeth Ferrier and Frank H. Gillen,

Complainants below, Appellees. .

*Supreme Court, on Appeal, July 7, 1925.*

A devise to Sisters of Charity of St. Peter's, to be used to support orphan girls under its care, construed as a private bequest for orphans under institution named, and not a public bequest for orphans generally.

A court of equity has inherent power, under its jurisdiction over trusts, to construe and enforce wills, so far as the provisions thereof involve creation of trusts.

Controlling motive of courts in construing wills is to ascertain real intention of testator.

A devise to Sisters of Charity of St. Peter's and its successors and assigns, to be used for support of orphan girls under its care, cannot go to a new corporation, which came into existence after first corporation ceased to exist.

Where charitable purpose of testator is limited to a particular institution, if it ceases to exist, the legacy lapses, and will go to general charity only where there is a general charitable purpose; doctrine of *cy pres* never having been adopted by this State.

A devise to Sisters of Charity of St. Peter's, to be used to support orphan girls under its care, *held* not confined to orphans actually cared for at time of testator's death, but applies to all orphan girls under care of institution during its existence.

Appeal From Court of Chancery. From the decree entered in the court below, in accordance with the opinion reported

*ante p.* 242, the defendants took an appeal to the Supreme Court. The facts material to the decision of the cause, assignments of error and contentions of solicitors for the respective parties are set forth in the following opinion.

PENNEWILL, C. J., and RICE, HARRINGTON, RICHARDS and RODNEY, JJ., sitting.

*Charles F. Curley*, of the firm of Saulsbury, Curley and Davis, for the apellants.

*William S. Hilles*, for the appellees.

Appeal from the Court of Chancery, No. 1, October term, 1924.

RICHARDS, J., delivering the opinion of the court.

The complainants filed a bill in equity in the Court of Chancery of this State, on July 2, 1923, against the defendants, praying that six separate and distinct things be decreed by the Chancellor, all of which depended upon a construction of the last will and testament of Michael McCartney, deceased.

Michael McCartney died in November, 1903; by his will he devised the residue of his estate as follows:

"I give, devise and bequeath all of said property, real and personal, of every nature and kind, and wheresoever situated at the time of the death of my said wife, Adaline T. McCartney, unto the Sisters of Charity of St. Peter's School of Wilmington, a corporation existing under the laws of the State of Delaware, and to its successors and assigns forever, to be used by said corporation for the support and maintenance of the orphan girls under its care and charge."

At the time of the execution of the will of Michael McCartney "the Sisters of Charity of St. Peter's" was a corporation existing under the laws of the State of Delaware, having been created by a special act of the Legislature, dated February 5, 1841 (9 *Del. Laws, p.* 331), for a period of twenty years; its corporate existence was renewed on February 12, 1861, for a further period of twenty years, and again on April 1, 1881, for a further period of twenty years, each of said renewals being by special act of the Legislature. Its corporate existence expired with the termination of the last

twenty year extension of its charter on April 1, 1901, which was four years after the date of the will of Michael McCartney and a little less than three years prior to his death.

An entirely new corporation, known as "the Sisters of Charity of St. Peter's School, Incorporated," was incorporated on the second day of March, 1904.

The appellees are the heirs at law of Michael McCartney and alleged, in their bill filed before the Chancellor, that they were entitled to his real and personal property, subject to the life interest of his wife, Adaline M. T. McCartney, and were entitled to an accounting from Matthew D. Murphy, individually, as executor of the will of Michael McCartney and as executor of the will of Adaline M. T. McCartney.

The Chancellor's decree was in favor of the compla'nants, from which this appeal was taken.

The following assignments of error were filed:

(1) That the Chancellor erred in holding that the complainants, Mary E. McBride, Catherine McBride, Catherine Morley, Julia O'Connell, Margaret Libbey, Elizabeth Ferrier and Frank H. Gillen, as heirs at law of Michael McCartney, were entitled to the property, constituting the said McCartney's residuary estate

(2) That the Chancellor erred in holding that the above-named complainants were entitled to raise the question as to the right of the said corporation "the Sisters of Charity of St. Peter's," to take the residuary estate devised to it in and by the will of the said Michael McCartney.

(3) That the Chancellor erred in holding that the corporation, "the Sisters of Charity of St. Peter's;" lacked power to take the residuary estate devised to it in and by the will of the said Michael McCartney.

(4) That the Chancellor erred, upon the evidence in the case, in holding that the persons intended to be benefited by the said residuary disposition in the will of the said Michael McCartney were alone the particular orphan girls who were in the care and charge of the said corporation at the time of the said Michael McCartney's death.

(5) . That the Chancellor erred, upon the evidence in the case, in construing the will of Michael McCartney as intending to benefit certain individual orphan girls only, to the exclusion of all others of the class described as needy female Catholic orphans of the diocese of Wilmington.

(6) That the Chancellor erred, upon the evidence in the case, in refusing to hold that Michael McCartney by his said will intended to benefit the class of persons described as needy female Catholic orphans of the diocese of Wilmington.

(7) That the Chancellor erred in holding that on the evidence in the case, no enforceable charitable trust was created by the will of the said Michael McCartney.

(8) That the Chancellor erred in entering a decree requiring Matthew D. Murphy, personally, or in any capacity to file an account showing the property formerly of the said Michael Mc-Cartney and now belonging to the plaintiffs in the said case.

(9) That the Chancellor erred in entering a decree recognizing the plaintiffs in the said cause as the owners of the property constituting the residuary estate of the said Michael McCartney.

At the argument before this court the appellant relied upon assignments of error Nos. 1, 4, 5, 6, 7, 8, and 9, under which it was contended that, from the language of that portion of the will in question, it appeared that the testator intended to create a trust for the benefit of a defined class of persons, the individuals composing the class being undefined, namely, "needy female orphans of the Catholic diocese of Wilmington.".

It was admitted that the devise was intended for a corporation known as "the Sisters of Charity of St. Peter's," and not "the Sisters of Charity of St. Peter's School of Wilmington."

The sole question before this court is whether the testator intended to create a trust for the benefit of orphan girls generally, or orphan girls under the care and charge of "the Sisters of Charity of St. Peter's."

Counsel for the appellants argued that the class of persons intended to be benefited was "needy female orphans of the Catholic diocese of Wilmington," but this court is unable to see how it is possible to place upon the words of the will such a construction

as will lead one to that conclusion. Not only did the testator fail to mention the Catholic diocese of Wilmington, but failed to mention orphan girls of the Catholic denomination, or any other denomination.

The inherent power of a court of equity, under its general jurisdiction over trusts, to construe and enforce wills of both real and personal property, so far as the provisions thereof involve the creation of trusts, has long been recognized. *Hart v. Darter*, 107 *Va.* 310, 58 *S. E.* 590, 15 *L. R. A.* (*N. S.*) 599, 13 *Ann. Cas.* 1; *Miller v. Drane*, 100 *Wis.* 1, 75 *N. W.* 413; *Miles v. Strong*, 62 *Conn.* 95, 25 *Atl.* 459; *Minkler v. Simons*, 172 *Ill.* 323, 50 *N. E.* 176; *Andersen v. Andersen*, 69 *Neb.* 565. 96 *N. W.* 276; *Torrey v. Torrey*, 55 *N. J. Eq.* 410, 36 *Atl.* 1084; *Chipman v. Montgomery*, 63 *N. Y.* 221.

A will being the method to which man resorts in order to dispose of his property after his death, the controlling motive of the courts in undertaking a construction thereof, should be to ascertain the real intention of the maker. *Andrews v. Applegate*, 223 *Ill.* 535, 79 *N. E.* 176, 12 *L. R. A.* (*N. S.*) 661, 7 *Ann. Cas.* 126; *In re Paxson's Estate*, 241 *Pa.* 452, 88 *Atl.* 673, *L. R. A.* 1915C, 1009; *Appeal of Scully*, 91 *Conn.* 45, 98 *Atl.* 350; *Presbyterian Church v. Mize*, 181 *Ky.* 567, 205 *S. W.* 674, 2 *A. L. R.* 1237; *Doughten v. Vandever*, 5 *Del. Ch.* 51; *Sussex Trust Co. v. Polite, et al.*, 12 *Del. Ch.* 64, 106 *Atl.* 54.

Adopting this course in connection with the McCartney will, what conclusion do we reach?

It is admitted that the Sisters of Charity of St. Peter's was the corporation to which the property in question was devised after the death of the testator's wife, and to quote the language of the will, "and to its successors and assigns forever, to be used by said corporation for the support and maintenance of the orphan girls under its care and charge." How can that language be construed to mean orphan girls under the care and charge of some other corporation which came into existence after the above named corporation had ceased to exist, or "needy female orphan girls of the Catholic diocese of Wilmington," as was argued by the learned counsel?

While the question of the power of the Sisters of Charity of

St. Peter's to take the residuary estate devised to it by the testator, is not before this court, yet it is important not to lose sight of the fact that the Chancellor held, that by reason of the forfeiture of its charter, it had ceased to exist as a corporation, except for the purpose of winding up its affairs and disposing of the property which it had.

This question not being raised in the argument before this court, and no exception being pressed as to the Chancellor's decision thereon, how can it now be argued that the new corporation "Sisters of Charity of St. Peter's School, Incorporated," is entitled to the benefit of the devise, for whatever right it acquired thereto must have been derived from the Sisters of Charity of St. Peter's.

The entire argument before this court dealt with the question of whether the testator intended to benefit only the orphan girls in the care and charge of the Sisters of Charity of St. Peter's, or orphan girls of the diocese of Wilmington generally. In other words, whether the charitable bequest was of a private or public nature.

It must be conceded that the devise was intended for a charitable purpose. The Sisters of Charity of St. Peter's being near the home of the testator, it is reasonable to assume that he was familar with conditions there, that he knew the kind of orphan girls taken by it and the manner in which they were cared for; then what would have been a more reasonable and natural thing for him to have done than to make the orphan girls in its care and charge the beneficiaries of his charity?

There can be no doubt that the distinction referred to by the Chancellor, between gift to a charity generally, pointing out the mode of carrying it into effect, and a charitable gift to a particular institution, is correct. The leading English case of *Clark v. Taylor*, 1 *Drewery*, 596, lays down the doctrine very clearly, pointing out that the gift goes to charity generally only in those cases where there is a failure of the mode of carrying into effect a gift to charity which indicates a general charitable purpose. The gift in the above mentioned case was likewise to a female orphans' school which was discontinued before the death of the testator, and the following language used in that case by the Vice Chancellor is particularly applicable to the present case:

"There is another class in which the testator shows an intention, not of general charity, but to give to some particular institution; and then if it fails, because there is no such institution, the gift does not go to charity generally; that distinction is clearly recognized; and it cannot be said that wherever a gift from any charitable purpose fails, it is nevertheless to go to charity."

This decision was rendered by the English Court of Chancery, notwithstanding the *cy pres* doctrine in force there, the purpose of which was to prevent the failure of charitable bequests wherever it was possible to do so. While the *cy pres* doctrine has been looked upon with favor by the courts of a number of states in this country, it has never been adopted in Delaware. *Doughten v. Vandever*, 5 *Del. Ch.* 51. The case of *Clark v. Taylor*, above cited, was followed by the later English cases of *Russell v. Kulett*, 3 *Sm. & Giff.* 264, *Fish v. Attorney General*, *L. R.* 4 *Ex. Cas.* 521, and *Broadbent v. Barrow*, 29 *Ch. Div.* 560. The Rhode Island case of *Gladding v. St. Matthew's Church*, 25 *R. I.* 628, 57 *Atl.* 860, 65 *L. R. A.* 225, 105 *Am. St. Rep.* 904, 1 *Ann. Cas.* 537, in which the facts were very similar to those in the case now before the court, followed the principle laid down by the English cases above cited. To the same effect are *Merrill v. Hayden*, 86 *Me.* 133, 29 *Atl.* 949, and *Teele v. Bishop of Deery*, 168 *Mass.* 341, 47 *N. E.* 422, 38 *L. R. A.* 629, 60 *Am. St. Rep.* 401. The following quotation from the Massachusetts case of *Teele v. Bishop of Deery* shows that the courts of that State have followed the English decisions, regardless of the *cy pres* doctrine which seems to have been adopted there:

"The difficulty in this case, and generally in cases like it, is one of construction—to find out the intention of the testatrix. When that is arrived at, the rules of law which apply seem to be pretty well settled. If it appears from the will that the intention of the testatrix was that her property should be applied to a charitable purpose whose general nature is described so that a general charitable intent can be inferred, then if by a change of circumstances or in the law it becomes impracticable to administer the trust in the precise manner provided by the testatrix, the doctrine of *cy pres* will be applied in order that the general charitable intent which the court regards as the dominant one may not be altogether defeated. *   *   *

"But if the charitable purpose is limited to a particular object or to a particular institution, and there is no general charitable intent, then, if it becomes impossible to carry out the object, or the institution ceases to exist before the gift has taken effect, and possibly in some cases after it has taken

effect, the doctrine of *cy pres* does not apply, and, in the absence of any limitation over or other provision, the legacy lapses."

Counsel for the appellants has cited the case of *Marsh v. Attorney General*, 2 *J. & H.* 61, as supporting his contention, but we are unable to agree with him, as the Vice Chancellor expressly stated that he did not consider the legacy a gift to the particular school mentioned in the will, but a gift to the treasurer and president of the school to be applied as they thought best for the instruction of youth.

We do not agree with the argument of counsel for the appellants to the effect that under the Chancellor's opinion, only orphan girls who were actually under the care and charge of the Sisters of Charity of St. Peter's at the time of the testator's death, or at the time the devise became effective, were entitled to be benefited thereby; but take the view that said devise was held to be applicable to all orphan girls who should be under the care and charge of said institution at any time during its existence.

The case of *Doughten v. Vandever*, 5 *Del. Ch.* 51, does not decide the point raised in this case. The court did hold that where the intention of the testator sufficiently appears, the bequest will be held valid, and went to considerable trouble to locate the various institutions to which the bequests were made; but it did not go so far as to hold that a bequest which was clearly intended for a particular institution which had ceased to exist at the time the will took effect, should be taken by another institution in order that the objects thereof might be carried out.

We are convinced that it does not appear from the will in question that the testator  intended that his property should be applied to a general charitable purpose, but only for the benefit of the orphan girls who should be under the care and charge of the institution named therein, and that the decree of the Chancellor should, therefore, be affirmed.