JOHN W. STERLING ET AL., TRUSTEES, *vs.* CAROLINE P. IVES ET ALS.

First Judicial District, Hartford, January Term, 1906.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A testator who died in 1867 leaving a widow, two sons, *P* and *W*, and one daughter, *S*, gave the residue of his property, valued at $650,000, to trustees, directing that the net income be paid over by them semi-annually to his three children equally during their respective lives, "subject, however, to the conditions and limitations hereinafter set forth, and to the discretionary power hereinafter vested in said trustees respecting such payments." The next clause (14th) provided that upon the decease of any of said children, his or her surviving issue should receive, in like manner, equally, the income theretofore payable to their deceased parent, until they reached

twenty-one respectively, when "I give, devise and bequeath to them respectively, their heirs and assigns in equal portions forever, so much of the principal of my estate as is herein devised and bequeathed for the use and benefit of such deceased son or daughter: provided, that such surviving issue are to take *per stirpes* only and not *per capita,* and the shares of such as shall have attained the age of twenty-one years at the time of the decease of such son or daughter, their ancestor, to be paid to them respectively immediately upon the decease of such ancestor. Always provided, however, that in case either of my sons should die leaving a widow, then my will is that one third part of the income herein directed to be paid to or for her deceased husband during his life, shall in like manner be paid to her during her natural life. And upon her decease leaving lawful issue of her deceased husband (my son) then living, said one third part income and principal to go for the benefit of such issue in the same manner as the other two third parts thereof." The 15th clause provided for the contingency of the death of " any descendant " of either of the testator's sons, while any portion of the estate was held in trust for such descendant. The 17th clause directed that sums paid for and charged to any of his children by the testator should be treated as advancements. By the 19th clause the trustees were given discretion to withhold or suspend payments of income whenever they believed the money was diverted or applied to improper uses, and any income so withheld was to be invested and added to the residuary estate, subject, however, to withdrawal by the trustees if they should afterward think best to pay it over to, or expend it for the benefit of, those who would have been entitled to it but for said clause. If the income proved insufficient in the judgment of the trustees, for the support of the testator's children and their families, the trustees were authorized and requested by the 20th clause to draw upon the principal of the estate so far as they deemed it necessary for that purpose. By a codicil they were also given discretion to pay over to the testator's daughter and her family so much of the income as had been withheld and added to the principal, under the 19th clause of the will, as they should deem necessary for her support according to her station in life. The testator's widow died in 1869; *W,* one of the sons, in 1893, leaving a widow and three children, the eldest of whom became twenty-one in May, 1905; *P,* the other son, died in September, 1904, leaving a widow and four children all of full age; *S,* the daughter, is living and has four children, one of them a minor. From time to time the trustees have paid over to certain of the testator's children and their families portions of the principal of the estate; but such payments have not been equally divided. In a suit for the construction of the will it was *held :—*

1. That the general intent of the testator was equality between his

three children and their families in the distribution of income and principal.

2. That from and after *W's* death in 1893, neither the income nor the principal, of what for convenience may be called *W's* share, of the estate, could be reduced, under any authority given the trustees by the 20th clause of the will, by drafts thereon in favor of *P* and his family, or of *S* and her family; that one third of what constituted the principal of the fund at *W's* decease ought to have been severed and set apart at that time, and must now be severed and set aside, for *W's* widow and children; that in two thirds of such portion *W's* children, at his death, took a vested interest, subject only to any valid provision for their death under age, and his widow became entitled to the income during her life of the remaining one third, which must also be set apart for her benefit; and that upon her decease such third would go to the issue of *W* then living, if any, otherwise as provided in the 15th clause of the will.

3. That a similar severance of one half of what constituted the principal of the trust fund at *P's* death in 1904 must now be made, two thirds of which *P's* children, all being of full age, were entitled to receive in fee, while his widow and issue took the same rights in the remaining third—which was also to be severed—that *W's* widow and issue took in *W's* share.

4. That after *W's* death and until *P* died, the shares of *P* and *S* constituted one undivided and indivisible mass, subject to all the discretionary powers of the trustees which had existed in respect to the entire trust estate before *W's* death.

5. That additions made to the principal of the fund, under authority of the 19th clause, and which formed a part thereof at *W's* death, should be treated as then fully incorporated into that principal, for the purpose of setting apart what represented his share of the principal of the estate.

6. That as each child of *W* and of *P* reached majority after the death of his father, he became entitled to the possession of his share of the estate.

7. That the provisions of the 19th clause respecting the withholding of income did not apply to the testator's grandchildren.

8. That all payments of principal, made by the trustees in the exercise of their discretionary powers, to any beneficiary, operated as a withdrawal of the amount so paid, finally and forever, from the principal of the estate.

9. That the discretion as to making or withholding payments of principal or income, conferred upon the trustees by the 19th clause, and also the powers given by the 20th clause and by the codicil, continued unabridged in respect to the daughter *S* and her family, so far as the remaining third of the trust fund was concerned.

10. That any payments of principal hereafter made by the trustees, under their discretionary powers, to *S* or her family, should not be

Sterling *v.* Ives.

counted as a part of the principal of the estate upon any future distribution.

11. That the trustees had no discretion to pay any principal to the widow of either son, but as to income they still had the discretionary powers given them by the 19th clause in respect to other legatees.

Argued January 4th—decided February 7th, 1906.

ACTION by the trustees under the will of Lawson C. Ives of Hartford, deceased, for a construction of his will; brought to the Superior Court in Hartford County. Answers admitting the truth of the allegations of the complaint were filed by all the defendants. Sophia L. Owen, a daughter of the testator, also made sundry allegations in her answer, to which the other defendants demurred. Their demurrer was sustained (*Reed, J.*) and a judgment rendered giving a construction to the will; from which all the defendants except Sophia L. Owen and those belonging to her family appealed. *Error, judgment reversed and cause remanded.*

The testator died in 1867, leaving a large estate, real and personal. His will made certain charitable bequests, and contained the following provisions as to his residuary estate :—

It was devised and bequeathed to trustees and to their successors as joint tenants in fee simple forever. They were to allow the widow to occupy the homestead and use its furniture during her widowhood; furnishing a home therein for her daughter Sophia, while the latter remained unmarried, she paying a reasonable compensation for her board. On the termination of this estate in the widow, Sophia was to have the furniture absolutely, and the use of the homestead so long as she desired and as the trustees deemed it expedient.

The property, other than the homestead and furniture, was to be invested in productive property, and directions were given as to the disposition of the income, which appear in the foot-note.[1]

[1] "*Eleventh.* Whereas, I am desirous of devoting to charitable purposes a still larger portion of my estate; and whereas, it appears that the net income of said residue and remainder of my estate may be

The residuary estate was distributed to the trustees in 1877 at a valuation of over $650,000.

The testator's widow died in 1869. He left three surviving children, Philo, Walter, and Sophia. Walter died in

---

more than sufficient for the wants of my wife and children and their families: My will is and I do direct that whenever while said residue and remainder of my estate, or any part thereof, may be held in trust as herein provided, the net income of said residue and remainder shall amount to the sum of Twenty-five Thousand Dollars ($25,000) or more for any one year, and also whenever the net income of so much of said residue and remainder of my estate as may remain in the hands of said trustees undistributed, or not paid over or conveyed in fee to my devisees or legatees under the provisions of this will shall equal or exceed the ratio of Twenty-five Thousand Dollars ($25,000) per annum for the whole of said residue and remainder, then and in each of said events, the said trustees shall set apart as a charitable fund to be appropriated as hereinafter directed, certain portions of said net income, as follows, viz.:—For each year that such net income shall amount to Twenty-five Thousand Dollars ($25,000) or the above mentioned proportionate part thereof, but shall be less than Thirty Thousand Dollars ($30,000) or said ratable part thereof, five (5) per cent. of such net income shall be set apart for said charitable fund. For each year that such net income shall amount to Thirty Thousand Dollars ($30,000) or the above mentioned proportionate part thereof, but shall be less than Forty Thousand Dollars ($40,000) or said ratable part thereof, said trustees shall set apart for said charitable fund ten (10) per cent. of such net income; and for each year that such net income shall amount to Forty Thousand Dollars ($40,000) or more, or the above mentioned proportionate part thereof, said trustees shall set apart for said charitable fund twenty (20) per cent. of such net income. In the event of the decease of my said daughter Sophia, either during my life or after my decease without leaving issue surviving her, then I direct that so much of said income as my said daughter under the provisions hereinafter contained would have been entitled to if living, shall be annually or oftener set apart by said trustees and added to said charitable fund for the period of twenty (20) years after the decease of my said daughter in case of her surviving me; and in case of my surviving her, then for the period of twenty (20) years after my decease. And as a tribute to the memory of my two deceased daughters, my will is and I do further direct that after setting apart for said charitable fund the percentage of said net income as above directed, the net income of one-fourth ($\frac{1}{4}$) part of said residue and remainder of my estate shall be annually or oftener set apart by said trustees and added to said charitable fund for the period of twenty (20) years after my decease; the whole of said charitable fund to be disposed of by said trustees as follows, viz.:"

1893, leaving a widow born prior to the testator's decease, and three children. Philo died in September, 1904, leaving a widow born prior to the testator's decease, and four children. Sophia is married and has four children. Several of

Certain incorporated charities were then named as the beneficiaries.

" *Twelfth.* From the remainder of the net income of said residue and remainder of my estate I direct that there be paid to my said wife, Mariett T. Ives, the sum of Twenty-five Hundred Dollars ($2500) at the end of every six months from my decease to wit: Five Thousand Dollars ($5000) per annum, and at that rate for and during the entire term of her natural life, provided she shall remain unmarried and not otherwise. In the event of her marrying again, said annuity is to be paid to her to the time of such marriage only; and upon the decease or marriage of my said wife, then and in either of said events, all payments herein directed to be made to her, and all trusts herein created for her benefit, are forthwith to cease and be determined.

" *Thirteenth.* My will is, and I direct that all the balance of said net income of said residue and remainder of my estate, together with said annuity to my wife from and after the time of her marriage or decease, and including also the foregoing twenty (20) years appropriations for a charitable fund, whenever and as said appropriations shall respectively cease under the foregoing provisions, be paid over by said trustees semi-annually to all my children equally, to wit: to Philo L., Walter D., and Sophia L. Ives, during the terms of their natural lives respectively, subject however to the conditions and limitations hereinafter set forth, and to the discretionary power hereinafter vested in said trustees respecting such payments.

" *Fourteenth.* Upon the decease of my said daughter or either or both of my said sons, leaving lawful issue then living, my will is that the income herein directed to be paid to or for the benefit of such deceased son or daughter during his or her life, be paid in like manner equally to or for the benefit of such surviving issue until they arrive at the age of twenty-one (21) years respectively; and as they respectively attain said age, I give, devise and bequeath to them respectively, their heirs and assigns, in equal portions forever, so much of the principal of my estate as is herein devised and bequeathed for the use and benefit of such deceased son or daughter: provided, that such surviving issue are to take *per stirpes* only and not *per capita,* and the shares of such as shall have attained the age of twenty-one (21) years at the time of the decease of such son or daughter, their ancestor, to be paid to them respectively immediately upon the decease of such ancestor. And in determining the respective portions so given in fee, my children are to be considered as the beneficiaries and legatees of the *percentage* of net income hereinbefore conditionally appropriated for a

the grandchildren were minors in November, 1904, when this suit was brought.

The trustees from time to time have paid over to certain of the testator's children and their families portions of the

charitable fund.   Always provided, however, that in case either of my sons should die leaving a widow, then my will is that one-third ($\frac{1}{3}$) part of the income herein directed to be paid to or for her deceased husband during his life, shall in like manner be paid to her during her natural life.   And upon her decease, leaving lawful issue of her deceased husband (my son) then living, said one-third part ($\frac{1}{3}$) income and the principal to go for the benefit of such issue in the same manner as the other two-third parts ($\frac{2}{3}$) thereof.   And in case of no such issue surviving her, said income and principal to be held and disposed of by said trustees in the manner provided in the clause next following.

" *Fifteenth.* In case of the death of either or both of my sons during my life without leaving lawful issue surviving me, or in the event that after my decease either or both of my sons should die without leaving lawful issue then living, or in case of the death of any descendant of either of said sons while any portion of my estate is held in trust for such descendant, then and in every such case my will is that so much of my estate as is herein directed to be held for the use or benefit of any son or descendant so deceased shall, upon such decease, be thenceforth held and disposed of by said trustees in the manner and for the purposes following, to wit: said trustees to pay or not at their discretion to or for the benefit of my then surviving descendants, or such of them as said trustees may think best, the whole or any portion of the net income of such estate, so long as any of my grandchildren that may survive me shall be living under the age of twenty-one (21) years, till which time said trustees shall from time to time as the same accrues, set apart and add to said charitable fund to be disposed of as above directed, so much of said income of the estate referred to in this clause as shall not have been paid to my descendants under the above discretionary power.   And at the termination of the period above limited, I authorize and empower said trustees at their discretion to distribute and pay over in fee to all or such of my descendants as they may think best and in such proportions as they may deem expedient the whole or any portion of the principal of said estate referred to in this clause.   And I do give, devise, and bequeath so much of said last mentioned principal as said trustees may not deem it best to distribute or pay over to my descendants as above, as follows, viz: ".

The same charitable corporations named in the eleventh clause were then designated as the beneficiaries under the fifteenth, which concluded with the following words: " This clause however to be construed subject to the foregoing pro-

principal of the estate. Such payments were not equally divided among such children and their respective families. They have filed their accounts from time to time in the proper Court of Probate, which has approved them, but it

vision for the widow of a deceased son during her natural life."

"*Seventeenth.* In the distribution of interest among my children and their families, and in the division of the principal of my estate as herein directed, my will is that any sum or sums of money by me advanced to or paid for the benefit of any of my children and charged to them, or for which I may hold their notes, be estimated as if now forming a part of my estate, or as it is technically called, be brought into hotchpot, so that each of said children and their respective issue will be entitled to so much less interest as would accrue on said advancements or payments to or for such child (together with interest thereon to the time of my decease) at six per cent. annual interest. And upon the distribution of the principal of my estate herein given for the use of any child or his or her issue, said advancements or payments to or for said child, including interest thereon to the time of my decease, are to be deducted from said principal.

"*Eighteenth.* In case of the decease during my life of any devisee or legatee herein named whose lawful issue shall be living at my decease, then my will is that such issue shall take at my decease the same estate and only the same estate and only the same that such issue would have taken upon the decease of such devisee or legatee had such deceased devisee or legatee survived me. And in case of the happening of any contingency whatever in consequence of which any portion of my estate would but for the provision now to be made become or be treated as intestate estate, then my will is that upon the happening of any such contingency so much of my said estate as would otherwise be treated as intestate shall go to and be held by said trustees for the benefit of my surviving children, with right of representation to the issue of such of my children as may have deceased, in the same manner as is herein provided in respect to property directly given in trust for them.

"*Nineteenth.* The rents, dividends, interest, and income to be paid under this will, I intend for the personal use and benefit of the respective legatees. I therefore provide that no sum or sums intended to be paid as aforesaid shall in any way be anticipated, aliened, charged, incumbered, or diverted from the use so designated. And if any person I so intend to benefit shall do any act or make any contract or conveyance, or if any proceeding shall be had in law or chancery or otherwise, by reason of which act, contract, conveyance or proceeding he or she would, if such trust were to continue in his or her favor, be deprived of the personal receipt or use of any sum intended for his or

was not alleged that such approval was ever given on due notice to the parties in interest. The last account filed shows the present amount of the principal of the trust estate to be about $433,000.

her benefit, then and in every such case, and immediately upon such act, contract, conveyance, or proceeding, the trust for the payment to him or her of such rents, dividends, interest, or income shall cease and be utterly void. In which event I authorize said trustees to apply the amount of such rents, dividends, interest, and income for the support of the person as to whom said trust shall have ceased as aforesaid, or of his or her family at their discretion, but he or she not to have any legal claim therefor. And furthermore, in case said trustees should at any time have reason to suppose that any interest or income herein bequeathed is applied by any legatee or is suffered by such legatee to be applied to improper uses, or to such as in the judgment of said trustees are not conducive to the comfortable maintenance and support of such legatee or his or her family, then and in every such case, I authorize and empower said trustees at their discretion and for such time or times as they may think best, to suspend payment to such legatee of the whole or any portion of the interest or income herein bequeathed to or for such legatee. And in this event also I authorize and request said trustees to apply the amount of such interest and income for the support of such legatee or his or her family at their discretion, he or she not to have any legal claim therefor during such suspension. My will is, however, and I direct that whenever under the provisions contained in this clause the trust in favor of any legatee or legatees shall cease, and whenever said trustees shall suspend payment of income under the authority herein given, the principal of the estate theretofore held in trust for the person or persons as to whom said trust shall have ceased or said payments of income shall have been suspended under the foregoing provisions, shall still continue to be held and managed by said trustees as before, and for the same term or terms as said estate would have been held by said trustees had this clause 'Nineteenth' not formed a part of my will. The income of such portion of my estate not expended for the person (or his or her family) as to whom said trust shall have ceased or said payments been suspended, to be invested by said trustees from time to time and added to the residue and remainder of my estate. Provided, however, that the investments of said surplus income may from time to time, at the discretion of said trustees, be by them expended for or paid over to those persons or their families who would have been entitled to the same under this will but for the provisions contained in this clause 'Nineteenth.' And in no event are said trustees or any of them to be accountable to any person or tribunal for the manner in which or the extent to which any discretionary power herein given to said trustees may be exercised by them.

In behalf of Sophia and her family an answer was filed containing averments to the following effect: When the testator made his will and codicils his two sons had, as he knew, displayed tendencies toward wasteful and profligate

" *Twentieth.* I hereby authorize and empower my Executor alone while acting as executor, and also said trustees, the survivors and survivor of them and their successors in said trust, to sell any and all my real estate at their discretion. And if from any cause the income from my estate which I have appropriated for the support of my said wife and children and their families should at any time be insufficient in the judgment of said trustees for that purpose, then I do authorize and empower and request the said trustees from time to time to appropriate at their discretion such and so much of the principal of my estate or of the above-mentioned charitable fund as in their judgment may be necessary in addition to said income for the comfortable maintenance and support of my said wife and children and their families in accordance with their station in life."

The trustees were then made self-perpetuating, and their successors were invested with the same " rights, powers, and duties " assigned to those originally named.

A first codicil made four months later contained this clause :—

" *Fourth.* In the event that the income of my estate which is given in and by said will to my daughter Sophia should in the judgment of the trustees under said will be insufficient for the support of the said Sophia and any family she may have, according to her and their station in life, then my will is, and I do authorize and direct my trustees from time to time and at their discretion, to pay over to or expend for the benefit of said Sophia and her family, if any she may have, so much as said trustees may deem best of the income if any there be which in and by the clause ' Nineteenth ' of my said will is directed ' to be invested by said trustees from time to time and added to the residue and remainder of my estate.' And should said trustees under the discretionary power given them in said will deem it best to appropriate any portion of the principal of my estate for the support of my wife or any of my children or their families, then my will is that such appropriations be first made out of the ' one-fourth ($\frac{1}{4}$) part of said residue and remainder of my estate,' of which the income is by clause ' Eleventh ' of my said will set apart as a charitable fund for the period of twenty (20) years after my decease. But except as the same is needed for the support of my wife or any of my children or their families, my will is and I direct that no portion of the principal of my estate of which the income is by said clause ' Eleventh ' of said will either ab-

habits, such as gave room for much anxiety concerning their future characters and lives. On the contrary, the testator's daughter, Sophia Ives Owen, had led an exemplary life, had lived at home with her father and was held by him in particular regard and esteem, and this special regard and fondness of the testator for his said daughter is shown by the provisions of the will and codicils. Said trustees from time to time had reason to suppose, and did in fact suppose, that the interest or income bequeathed in said will to said Philo L. Ives and Walter D. Ives, and to the legatees in their families, was being applied by said legatees, or suffered by them to be applied, to improper uses, and that said trustees did from time to time suppose, upon reasons that seemed ample to them, that said interest and income was being applied by said legatees, or suffered by them to be applied, to uses that in the judgment of said trustees were not conducive to the comfortable maintenance and support of said legatees and their families; and said trustees, acting under the discretionary powers conferred by clause "Nineteenth" of said will, from time to time did suspend payments to said Philo and Walter, and to the legatees in their families, of portions of the interest or income bequeathed in said will to said respective legatees, and did from time to time invest portions of said suspended income and add the same to the residue and remainder of the estate. In the judgment of said trustees, the income given by the will to Sophia was insufficient at all times for her support and that of her family, according to her and their station in life, and said trustees, acting under the discretionary powers conferred upon them by clause "Fourth" of the first codicil, did from time to time duly pay over to or expend for the benefit of said Sophia and her family certain portions of the income of

solutely or contingently devoted to charitable purposes for the specific term of twenty (20) years, and no portion of the income of such principal shall be paid or distributed to any of my family or descendants till the expiration of the term for which the said income is so devoted; but at and after such expiration said principal and income to be disposed of in the same manner as if said clause 11th ('Eleventh') had not formed a part of my said will."

said estate, which, in and by clause "Nineteenth" of said will, was invested by said trustees from time to time and added to the residue and remainder of the estate; and also, acting under the discretionary powers conferred by the "twentieth" clause of the will, from time to time duly appropriated portions of the principal of said estate and paid the same over to the said Sophia and to her family, in addition to the income paid them under the terms of said will, for their comfortable maintenance and support in accordance with their station in life.

To these allegations the other defendants demurred, because they set up irrelevant matters not germane to the complaint, and not such as tended to explain any ambiguity in the will.

The ruling sustaining the demurrer was not assigned as a reason of appeal by any of the appellants.

*Arthur L. Shipman*, for the plaintiffs.

*E. Henry Hyde*, and *Thomas T. Sherman* of New York, for the appellants Anna C. Lart *et als.*

*William F. Henney*, for the appellant Caroline P. Ives.

*Lucius F. Robinson* and *John T. Robinson*, with whom was *Ralph O. Wells*, for the appellants Emilie Ives *et al.*

*Edward D. Robbins*, for the appellees Sophia I. Owen *et als.*

BALDWIN, J.   The general intent of the testator was to secure a division, first of the income, and ultimately of the principal, of his residuary estate—subject to specified reservations in favor of his widow and daughter and of certain charities—between his three children or their families in three equal shares.

After his widow, his children were the primary objects of his solicitude, and particularly with reference to their comfortable support and that of the families which each might have.   To make this more sure he created, by the nineteenth

clause of his will, a spendthrift trust, and by the twentieth authorized, in case of his wife and children and their families, additions to income from the principal, should the trustees think it necessary. So far as his daughter was concerned, he also gave her a certain preference over her brothers, in this respect, by the directions in the first codicil.

The provisions thus made for the family of any particular beneficiary became inoperative on the death of that beneficiary. The family intended was that of which he was and remained the head. His death would dissolve and destroy it. *St. John* v. *Dann*, 66 Conn. 401, 404.

The death of Walter in 1893, leaving surviving issue, brought the fourteenth clause of the will into operation as respects the third of the estate designed for him and his representatives. Thereafter the income previously payable to him, or for his benefit, was to be paid in like manner to, or for the benefit of, his widow and such surviving issue until such issue should respectively come of age.

For this purpose and until such times, the trustees were to continue in possession of the estate. But the ultimate title to two thirds of the share, which for convenience we may term Walter's, became vested at his death in his three surviving children, subject only to the provision for the death of any under age made in the fifteenth clause. The testator, after giving them two thirds of the income which their father had formerly enjoyed until one of them should become of full age, had provided in respect to the principal thus : " As they respectively attain said age, I give, devise, and bequeath to them respectively, their heirs and assigns, in equal portions forever, so much of the principal of my estate as is herein devised and bequeathed for the use and benefit of such deceased son or daughter : provided, that such surviving issue are to take per stirpes only and not per capita, and the shares of such as shall have attained the age of twenty-one (21) years at the time of the decease of such son or daughter, their ancestor, to be paid to them respectively immediately upon the decease of such ancestor."

Under the settled canon of construction that the law favors vested estates, this gift to them as they respectively came of age, being accompanied by a gift, in the case of any who should be minors, of the income meanwhile from their father's death, passed to each, on that event, a vested estate in his proportional share of two thirds of one third of the principal of the trust fund. *Johnson* v. *Edmond*, 65 Conn. 492, 499. Such third was obviously what the testator meant by " so much of the principal of my estate as is herein devised and bequeathed for the use and benefit of such deceased son." The postponement of the delivery of possession to any grandchild until he should be of age was intended primarily for his protection, and secondarily to keep the property in the testator's family or send it to charitable uses in case of the legatee's death when a minor.

As to the other third of Walter's share, the fourteenth clause of the will, after providing that one third of the income payable to or for the benefit of Walter during his life, should after his death be paid, " in like manner " to his widow for life, adds these words : " And upon her decease, leaving lawful issue of her deceased husband (my son) then living, said one-third part ($\frac{1}{3}$) income and the principal to go for the benefit of such issue in the same manner as the other two third parts ($\frac{2}{3}$) thereof. And in case of no such issue surviving her, said income and principal to be held and disposed of by said trustees in the manner provided in the clause next following."

The phrase " in the same manner," as thus employed, designates the mode in which the recipients shall be benefited. It cannot be regarded as intended to describe who such recipients are, and thus as sending either income or principal to those in whose favor estates in two thirds of Walter's share had already been created. The recipients intended are not left to be ascertained by inference, but are clearly designated. They are the issue of Walter who may be living at his widow's decease, and, should none such then survive, both income and principal were to go as the fifteenth clause particularly directs.

The phrase " one-third ($\frac{1}{3}$) part of the income herein directed to be paid to or for her deceased husband during his life," must be interpreted with reference to the previous provisions for a severance of Walter's third upon his death. If all his children had been then of age, and neither his wife nor the testator's widow had been living, it is plain that such a severance would have been required, for each child would have been immediately entitled to his share of the principal. Had the testator's widow been then in life, it would have been necessary and proper first to set apart, with the approval of the Court of Probate, a fund sufficient to produce an income which would satisfy all the provisions of the will in her favor, and to take a third of this fund for the time being out of what would otherwise be Walter's share. In like manner, Walter's widow can now be sufficiently protected by thus setting apart a third of that share to be held by the trustees for her benefit during her life ; and the general intent of the will justifies and requires the adoption of that course.

Whether there are in the will any provisions which are invalid under the former statute of perpetuities we have no occasion to inquire, since no advice has been asked by the trustees with respect to that question, nor any claim in regard to it made by any of the parties in interest either in this court or in the court below. In view of these conditions, we intimate no opinion as to the validity of any provision affecting the interest of a grandchild who may die under age.

From and after the death of Walter, neither the income nor the principal of his share could be reduced, under any authority given by the twentieth clause of the will, by appropriations in favor of Sophia and her family, or Philo and his family. So long as he remained in life, he or his family might have been benefited by appropriations from the trust fund at the expense of his father's other children and their families, and they at his expense and that of his family. There was thus a mutuality of burden. Each child bore his part of it, and to each it might be a source of benefit.

Walter's death cut off any further possibility of such benefits either to him or to his family. This termination of all opportunity for reciprocity in this regard, the provisions for a severance of the principal of his share, and the general intent of the testator to secure equality between his children, forbid a construction of the clause in question which would charge the share of any child, when once thus severed by reason of his death, with burdens in favor of any other child or of the family of any other.

We have also come to the conclusion that the nineteeth clause does not apply to the testator's grandchildren. While the language used is sufficiently general to comprehend them, it is controlled by the obvious purposes to secure which the article is drawn, and by the words of absolute gift found in the fourteenth clause. There could be no substantial danger from giving to each minor grandchild the benefit of the entire income of his share. It would naturally be disbursed either by the trustees or by his guardian, and in case of the marriage of a granddaughter was by the sixteenth clause secured, so far as it might come into her hands, to her sole and separate use. Nor is it consistent with the general intent of the testator to make an equal distribution between the three stocks of descent, to bring back the fruits of property once severed from the corpus of the trust to increase that corpus, even conditionally and temporarily.

From the date of the severance of Walter's share, which is to be made as of the date of his death, until the death of Philo, the other two shares remained in one undivided and indivisible mass, subject to all the discretionary powers of the trustees which had existed in respect to the entire trust estate prior to the death of Walter.

From and after the death of Philo, his third should have been divided and set apart, and the immediate ownership and enjoyment of two thirds of it then passed of right to his children, if they were all then of age, to be equally divided between them ; the other third of it being first set apart to be held by the trustees for the benefit of Philo's widow, for life, and then to go to his issue who may survive her, if any,

in the manner already stated with reference to the fund to be set apart for the primary benefit of Walter's widow.

During the life of Sophia, the discretionary power given to the trustees by the twentieth clause of the will, to make appropriations from the principal of the third of the residuary estate, remaining after the severance of Walter's third and Philo's third, to secure her comfortable maintenance and that of her family, continues in full force as respects her third.

So far as respects any addition to the principal of the trust fund which may have been made under the nineteenth clause, and which remained a part of the principal at the death of Walter, it should, for the purpose of setting apart what represents his share of the principal of the estate, be considered as then fully incorporated into that principal. So far as respects any addition to the principal of the trust fund which may have been made under that clause between the death of Walter and that of Philo, and which remained part of the principal at Philo's death, it should, in like manner, as to those purposes, be considered as then fully and finally incorporated into that principal.

All payments of principal, made by the trustees in the exercise of their discretionary powers, to any beneficiary, operate as a withdrawal of the amount so paid, finally and forever, from the principal of the estate. Such payments the will only authorized for the purpose of securing the comfortable support of those to profit by them. All money thus appropriated was to be used up for present necessities, and not saved to enrich the possessors. They were to take it as part of their income to be spent as such, and neither they nor their representatives can be thereafter held accountable for it, any more than for the disposition of what was received and paid to or for them as part of the regular income of the trust.

Inequality of benefit, as respects the three stocks of descent, has thus resulted, but only because it was a leading object of the testator, carefully expressed, to secure to each child for life a comfortable support for himself and his family, whatever differences between the families might exist in re-

spect to the number of persons included in each, or in the scale of expenditure corresponding to the social station in which each might be placed.    Had he intended that such appropriations should, on a final reckoning, be treated as made at the expense of any particular share, to go to any particular child or his representatives, it may be safely assumed, in view of the precise directions as to advancements made in the seventeenth clause, that he would have so expressly provided.

It follows that the Superior Court erred in its conclusions. The material questions asked by the trustees should have been answered as follows :—

1. The estate should not be kept intact and held as an entirety and the income applied, as directed by the will and codicils, so long as any of the children of the testator are alive.

3. The widow of neither son is now entitled to a specific portion of the income of the entire estate ; but the widow of each is now entitled to the income of a specific portion of the principal, to be set aside for her benefit.

4. The children of Philo, all being of full age, are now entitled to a portion of the principal of the estate ; namely, to two thirds of half of what of right constituted the principal of the trust fund at his death.

6. The children of Walter, although all but one are minors, are now entitled, so far as ownership is concerned, to a portion of the principal of the estate ; namely, to two thirds of one third of what constituted the principal of the trust fund at his death.    Walter Edgar Ives became, on May 24th, 1905, absolutely entitled to the possession of one third of said portion.    The others have each a vested interest in one half of what remains of it, subject to any valid provision that may exist for the contingency of their dying under age.

8. No payments of principal heretofore made to or for the benefit of the respective children of the testator or their families, by virtue of any discretionary powers conferred upon the trustees by the will and codicils, should be counted as a part of the principal of the estate.

9. The trustees have a discretion in future to make or withhold payments of principal or income to or for the benefit of legatees to the following extent : (1) All powers given them by the nineteenth clause continue unabridged as respects Mrs. Sophia I. Owen and her family during her life, with relation to the third of the estate remaining in their hands after Philo's share is severed. (2) All powers given them by the twentieth clause and the fourth clause of the first codicil continue unabridged as respects Mrs. Sophia I. Owen and her family, with relation to said third of the estate last above described.

10. Future payments of principal, if any, made to or for the benefit of Mrs. Sophia I. Owen or her family, by virtue of any of the discretionary powers conferred upon the trustees by the will and codicils, should not be counted as part of the principal of the estate upon any future distribution.

11. The trustees have no discretion to make any payment of principal to the widow of either son. As to the amount of income to be paid to each, they have the discretionary powers given them by the nineteenth clause of the will in respect to other legatees.

There is error, and the judgment of the Superior Court is reversed, and the cause remanded with directions to render a judgment in conformity with this opinion.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.