DELAWARE TRUST COMPANY, a corporation of the State of Delaware, Trustee under the Last Will and Testament of Georgie C. Morgan, deceased,

*vs.*

GEORGE S. GRAHAM, MARTIN B. GRAHAM, URIAS GRAHAM, ANNA GRAHAM COLLINS, VIRGINIA GRAHAM CRAIG, WO-MEN'S DIVISION OF CHRISTIAN SERVICE OF ST. JOHN'S METHODIST CHURCH, an unincorporated association, and FOREIGN MISSIONARY SOCIETY OF ST. JOHN'S METH-ODIST EPISCOPAL CHURCH, an unincorporated association.

*New Castle, September 9, 1948.*

*Richard F. Corroon,* of Southerland, Berl & Potter, for complainant.

*Henry W. Bryan,* of Hering, Morris, James & Hitchens, for George S. Graham, et al., residuary legatees under the will of the deceased.

*Melson & Melson* and *G. A. Peterson* for Women's Division of Christian Service of St. John's Methodist Church.

*William Poole* and *Henry Van Der Goes*, of Southerland, Berl & Potter, were permitted to file a brief as *amicus curiae*.

HARRINGTON, Chancellor: Georgie C. Morgan, late of Seaford, Delaware, died on or about February 22, 1926, leaving a last will and testament which was subsequently duly proved as such before the Register of Wills for Sussex County. That instrument is, in part, as follows:

"Third. I give and bequeath the sum of One Thousand Dollars, ($1000.00), unto the said Seaford Branch of the Delaware Trust Company, its successors and assigns forever, in trust nevertheless and upon the following uses and trusts namely: the said sum of $1000.00 to be safely and securely invested by my said trustee and the net income arising therefrom to be paid over annually to the Foreign Missionary Society of St. John's Methodist Episcopal Church of the town of Seaford, Delaware, to be used by the said Foreign Missionary Society in furtherance of the objects and purposes of said Society."

"Thirteenth: All the rest, residue and remainder of my estate, of whatsoever nature, name or kind, which I may own or to which I may be entitled at the time of my decease, I order and direct to be divided equally among the children of my nephews, Martin Graham and Harry Graham, who may be living at the time of my decease, share and share alike, to the children of my said nephews aforesaid absolutely."

The Foreign Missionary Society of St. John's Methodist Episcopal Church of the Town of Seaford, an unincorporated society, was in existence at the time of the death of Georgie C. Morgan in 1926 and received the net income from the fund in controversy until some time in 1940. In that year the Methodist Episcopal Church, the Methodist Episcopal Church South and the Methodist Protestant Church merged and created one religious organization, known as "The Methodist Church." Prior to the merger in 1940 the discipline of the Methodist Episcopal Church provided for: (1) a "Board of Foreign Missions" which had "committed to it the general supervision of all work in the foreign fields"; and (2) "an organization known as the Woman's Foreign

Missionary Society, to be governed and regulated by its Constitution." That society was to "work in harmony with and under the supervision of the authorities of the Board of Foreign Missions * * *." These provisions were in effect when the testatrix executed her will and at the time of her death, and the Foreign Missionary Society of St. John's Methodist Episcopal Church of Seaford was organized and conducted to aid in carrying out their purposes. The discipline of "The Methodist Church" for the year 1939 contained in the declaration of union provides:

(1) "The Methodist Church is the ecclesiastical and lawful successor of the three united churches and through which the three churches, as one united church, shall continue to live and have their existence, continue their institutions, and hold and enjoy their property, exercise and perform their several trusts under and in accord with the plan of union and the discipline of the United Church; * * *";

(2) (par. 932) "There shall be an incorporated Board of Missions and Church Extension of The Methodist Church, hereinafter called the Board. It shall conduct its operations through three administrative divisions, each of which shall be incorporated * * *";

(3) (par. 933) "The Board shall have control of all the work formerly controlled and administered by the following; * * * the Woman's Foreign Missionary Society, * * *";

(4) (par. 948) "All properties, trust funds, permanent funds and other special funds and endowments now held and administered by the several organizations merging into the Board of Missions and Church Extensions shall be carefully safeguarded and administered in the interest of those persons and causes for which said funds were established; * * *"; and

(5) (par. 1012) "Within the Board there shall be a Woman's Division of Christian Service, hereinafter called the Division, which shall be one of the co-ordinate administrative divisions of the Board. The Woman's Division shall include in its scope the interests and activities formerly promoted and administered by the Woman's Foreign Missionary Society, * * *."

The church discipline of 1944 makes no material changes in any of these provisions though it broadens the duties and powers of the Board of Missions and Church Extension and enlarges the geographical field in which it

is to operate. It expressly provides, however (par. 1257) that there shall be "a Woman's Society of Christian Service in every local church auxiliary to the Conference Woman's Society of Christian Service." St. John's Methodist Episcopal Church of Seaford is a concomitant part of the present Methodist Church but the Foreign Missionary Society of the Seaford Church, the named beneficiary of the income from the fund in controversy, is no longer in existence. Under the discipline of the Methodist Church that society has been replaced by the Woman's Society of Christian Service which was created in part to carry on both foreign and domestic missionary work. Whether the trust has failed and the fund composes a part of the residue of the estate of the testatrix, therefore, seems to depend upon whether the *cy pres* doctrine is applicable.

What is known as the *Statute of Charitable Uses* (43 *Eliz. Chapt.* 4) enacted by the English Parliament in 1601 was never in force in this State, but charitable trusts are recognized and enforced by this court under its ordinary equity jurisdiction. *State v. Griffith*, 2 *Del. Ch.* 392; *Griffith v. State*, 2 *Del. Ch.* 421; see also *Doughten v. Vandever*, 5 *Del. Ch.* 51.

The bequest to the complainant in trust, the income to be paid to the Foreign Missionary Society of the Seaford Church for use in furtherance of the objects and purposes of that society, is a charitable trust. *Zollman on Charities*, §§ 246, 247; *Scott on Trusts*, § 371.1. The English Chancellors also had jurisdiction over the enforcement of gifts for charitable uses before the enactment of the statute of 43 Elizabeth. *State v. Griffith, supra; Griffith v. State, supra;* see also *Doughten v. Vandever, supra.* Originally that was within the province of the King, but in the course of time the judicial part of his power was asserted by the Court of Chancery. See *Doughten v. Vandever, supra.* It is unnecessary to determine whether this was because of powers originally delegated by the King, as *parens patriae* to his

Chancellor, or whether it was because of the general juris-
diction of that court over trusts. See 3 *Blackstone's Com.*
427; *Atty. Gen. v. Brown,* 36 *Eng. Repr.* 384; 1 *Spence Eq.
Jur.,* 588; see also *Doughten v. Vandever, supra.* In Eng-
land it seems, however, that the first reason has been ac-
cepted. 4 *Hals. Laws of Eng.* 221, 339. Other powers,
not of a judicial nature, were retained and exercised by
the King, under his sign-manual, as one of his prerogative
rights. *Jackson v. Phillips,* 14 *Allen (Mass.)* 539; *Scott
on Trusts,* § 399.1; see also *Doughten v. Vandever, supra.*
It has been said that the enforcement of such rights was
usually delegated by the King to his Chancellor, though as
a mere ministerial function. *Scott on Trusts,* § 399.1;
see also *Doughten v. Vandever, supra.* However that may
be, the Court of Chancery would often refer cases which
did not come within its jurisdiction to the King for deter-
mination under his prerogative *cy. pres* powers. *Atty. Gen.
v. Sydeefen,* 23 *Eng. Repr.* 430; *Atty. Gen. v. Herrick,* 27
*Eng. Repr.* 461. It is, therefore, clear that the *cy pres* rule
was used in England in enforcing and applying gifts for
charitable uses in both judicial and ministerial cases. *Jack-
son v. Phillips, supra; Scott on Trusts,* § 399.1.

The term *"cy pres"* is in the Anglo-French dialect
and is equivalent to the modern French *"si pres"* which
means "so near" or "as near". *Scott on Trusts,* § 399.

The Woman's Division of Christian Service of St. John's
Methodist Church claims that, by the application of such
principles, it should be substituted for the Foreign Mission-
ary Society with respect to the use of the income of the
fund in the hands of the complainant trustee. It seems
unnecessary to consider the usual scope of the old preroga-
tive rule (see *Jackson v. Phillips, supra;* 3 *Scott on Trusts,*
§ 399.1; *Doughten v. Vandever, supra*) as it never had any
place in American jurisprudence. *Jackson v. Phillips, supra;
Doughten v. Vandever, supra.* Moreover, *State, use of
Wiltbank, v. Bates,* 2 *Harr.* 18, seems to be an example of

the court's refusal to apply prerogative *cy pres* principles in this State; but it goes no further. The more limited judicial rule is usually applied in the American states (*Jackson v. Phillips, supra; Scott on Trusts,* §§ 399, 399.1; 4 *Pom. Eq. Jur.,* (*5th Ed.*) § 1027), though it only applies to charitable trusts. See *Doughten v. Vandever, supra.*

Under the judicial *cy pres* rule, if a testatrix makes a gift in trust for charitable purposes, the failure of the particular object will not defeat the gift if a general charitable intent can be found; in that event, the fund will be applied by the court so as to carry out her intent as near as may be. *Jackson v. Phillips, supra; Wilber v. Asbury Park Nat. Bank,* 142 *N.J. Eq.* 99, 59 *A.* 2d 570; *Scott on Trusts,* §§ 399, 399.1; *Restatement Trusts,* § 399. This rule is not based on any arbitrary power in the courts but on a liberal rule of construction giving effect to the general and primary intent of the donor of a fund in trust for charitable purposes, despite the fact that her subsidiary intent to have the gift take effect in a particular way is impossible. *Jackson v. Phillips, supra; Perry on Trusts,* § 728. If, however, the donor intends her gift to be carried out in a designated manner only, and the particular object fails, the *cy pres* rule cannot be applied and the residuary legatees will take the fund. 3 *Scott on Trusts,* § 399; *McBride v. Murphy,* 14 *Del. Ch.* 242, 124 *A.* 798; *Id. on app.,* 14 *Del. Ch.* 457, 130 *A.* 283; *Wilber v. Asbury Park Nat. Bank, supra.* But if a gift has once taken effect and the particular object subsequently fails, courts usually find it less difficult to discover a general charitable intent than if the particular object had failed in the first instance. *Scott on Trusts,* § 397.3; 4 *Pom. Eq. Jur., supra,* § 1027; *Restat. Trusts,* § 399. In the absence of some controlling constitutional or statutory provision, this court ordinarily has the same inherent jurisdiction the English Court of Chancery had when we separated from that country. *Glanding v. Industrial Trust Co.,* 28 *Del. Ch.* 299, 45 *A.* 2d 553; *Theisen, Admr. d. b. n., v. Hoey, et al.,* 29 *Del. Ch.* 365, 51 *A.* 2d 61. Chancellor Sauls-

bury conceded this in *Doughten v. Vandever, supra.* In principle, there therefore seems to be no good reason why judicial *cy pres* should not be applied in appropriate cases by this court. Nor do I find any reported case that squarely repudiates that rule. I am aware that the Chancellor said in *Doughten v. Vandever* that *cy pres* was only applied in England in prerogative cases and, therefore, was not one of the inherent rights of this court; but, as we have seen, that was not a correct statement of the English law. There was doubtless some confusion in the earlier cases with respect to the line of demarcation between judicial and prerogative *cy pres,* but it is reasonably clear that it was fairly well established prior to 1776. While *Moggridge v. Thackwell* (32 *Eng. Repr.* 15) was not decided until shortly after 1800, it was, nevertheless, based on principles that had been long recognized. See *Jackson v. Phillips, supra; Atty. Gen. v. Pyle,* 26 *Eng. Repr.* 278. Moreover, *Doughten v. Vandever* did not require any consideration of the *cy pres* rule or a determination of whether it was applicable in this State. In that case, the will which the court was asked to construe made various bequests, but the only one that need be considered was the gift of a sum of money to the Trustees and Managers of the Philadelphia Waterworks forever. The court held that the bequest was neither for a charitable purpose nor in trust, and was therefore void. Furthermore, it is a matter of interest that the syllabus of *Griffith v. State, supra,* prepared by the court, says in part:

"If the objects (of a charitable gift) be uncertain, or the particular mode of application fail, the fund may be administered in England either by the Crown as *parens patriae* or by the Court of Chancery; in this State such a charity will be administered by the Court of Chancery."

Nor does *McBride v. Murphy,* 14 *Del. Ch.* 242, 124 *A.* 798, *Id., on app.,* 14 *Del. Ch.* 457, 130 *A.* 283, squarely determine that *cy pres* is not applicable in this State. Citing *Doughten v. Vandever, supra,* the court did say that *cy pres*

was not applicable here, but both the Supreme Court and the lower court considered cases which involved the rule in some detail and reached the conclusion that the intent of the testator, with respect to the disposition of the charitable gift, was specific with respect to the designated object. Furthermore, differing from this case, the corporate object of the gift had ceased to exist before the death of the testator. It is reasonable to conclude that the general purpose of Georgie C. Morgan in creating the trust in question was to aid foreign missionary work of the Methodist Episcopal Church which is a component part of the present Methodist Church, and the selection of the Foreign Missionary Society of St. John's Church at Seaford as the means of carrying out that general purpose was merely a matter of secondary importance. Applying the *cy pres* rule, the income from the fund in the hands of the complainant trustee should, therefore, be paid from time to time to the Woman's Division of Christian Service of St. John's Methodist Church at Seaford, to be used in the foreign missionary work of that great religious organization.

The Attorney General is a proper and usually a necessary party to a bill to enforce a charitable trust when the interest of the general public is involved. 3 *Scott on Trusts,* §§ 391, 394; see also *Cannon v. Stephens,* 18 *Del. Ch.* 276, 159 *A.* 234. This is also true when a bill for instructions is filed by a trustee, having possession of the fund, to determine the validity of the trust. *Scott on Trusts,* § 394. But in this case, the fund is intended to be used only for foreign missionary work, and the Attorney General is, therefore, not an essential party.

A decree will be entered in accordance with this opinion.