83 A.2d 111 (1951)
UNION METHODIST EPISCOPAL CHURCH et al.
v.
EQUITABLE TRUST CO.
Civ. A. 231.
Court of Chancery of Delaware, New Castle.
August 17, 1951.
Samuel R. Russell, of the firm of Logan, Marvel & Boggs, Wilmington, for complainants.
Caleb S. Layton, of the firm of Richards, Layton & Finger, Wilmington, for defendant.
*112 BRAMHALL, Vice Chancellor.
Under the last will and testament of Henry C. English, deceased, admitted to probate before the Register of Wills of New Castle County on March 3, 1921, testator provided, in part, as follows:
"Item-All the rest, residue and remainder of my estate of whatsoever kind, and wheresoever situate, real, personal or mixed, including the real estate, and the remainder of the money on deposit in the Wilmington Trust Company at Tenth and Market Streets, and at Second and Market Streets, the Wilmington Savings Fund Society and the Equitable Trust Company, I give, devise and bequeath to the said Equitable Trust Company, a corporation of the State of Delaware. In Trust, nevertheless, for the following uses, intents, and purposes, that is to say, to invest the principal sum (to be known as `The Henry C. English Helping Fund') in good income producing securities, with power to call in and reinvest the same in its discretion, to collect the income, interest and dividends arising therefrom and after deducting a reasonable compensation for its care and trouble to dispose of the net income as follows:  One-third thereof to be used in securing admission to the Home for Aged Women, a corporation of the State of Delaware, as hereinafter provided, one-third to be used in like manner in securing admission to the Home of Merciful Rest Society, a corporation of the State of Delaware, for *113 worthy members of Union Methodist Episcopal Church, and for worthy members of Scott Methodist Episcopal Church, who have been worthy members of said Churches for five years or more, by the payment of one-half the cost of admission, and who are to be selected and approved by the Official Board of said Churches.
"If the condition of the fund will allow, worthy couples may be aided in the same manner to admission to the Methodist Home of Philadelphia.
"I direct that a payment not exceeding five dollars be made to each of the beneficiaries under the fund on each Christmas Day if the condition of the fund will allow.
"The remaining one-third of the net income I direct shall be paid to the Trustees of the Home for Friendless and Destitute Children, a corporation of the State of Delaware.
"I direct that the provisions of this will be carried out as soon as it can be done with due regard to the interest of my estate and that the best business methods be observed in the management of my estate.
"If any church whose members are beneficiaries of this fund shall cease to exist, its successors shall be selected by a majority vote of the active ministers of the Methodist Episcopal Church of this City.
"If application for admission to the various Homes herein named should cease for any one year, I direct that one hundred dollars be paid into the `poor funds' of each of the two churches; The Union M. E. Church and Scott M. E. Church about the fifteenth day of December of the year in which there are no applications."
Trustee has paid one-third of the income to the Home for Aged Women Helping Fund and one-third of the income to the Home of Merciful Rest Helping Fund. The amount of principal of the two Helping Funds has increased so that the principal of the first is now $16,661.69 and the second is $16,602.72.
Because of the fact that few of the members of the Union Church and the Scott Church have desired to be admitted to the Homes, only two members of these Churches have applied for and have been admitted thereto. In addition, conditions at the Homes are so crowded that no vacancies now exist, nor will any probably exist for a considerable period of time to come.
By reason of the fact that one of the qualifications of admission to the Methodist Home of Philadelphia is that the applicants must be members of the Methodist Church in the Philadelphia Conference, and, since neither of these Churches is a part of the Philadelphia Conference, the trustee determined that it was unable to carry out that provision of the trust.
As provided by the will, trustee has paid to the "poor fund" of each of the churches named, in the years when there were no applications for admissions to the Home, the sum of $100.
It would therefore seem that the income which will be received on account of the trusts for the Aged Homes will be considerably in excess of the amount required to administer them. If it should be determined that admissions to the Philadelphia Home necessarily must come from Union and Scott Churches, the trust for "worthy couples" cannot be carried out according to the plan of testator.
For these reasons, the plaintiffs have made demand upon the trustee that all future income from the trust, over and above the amount which might be expended by the trustee in his efforts to carry out the specific provisions of the trust, be distributed annually to the trustees of Union and Scott Churches so that charitable assistance may be given to needy members thereof, particularly the aged. The trustee has refused to acquiesce to this demand, claiming that the terms of the will do not clearly permit its compliance therewith.
In considering the prayer of plaintiffs' petition, the Court must determine: First, is the rule of cy pres applicable in this state; secondly, if applicable, would the rule apply in this case; thirdly, should the Court apply the rule in the manner requested by plaintiff?
Is the rule of cy pres applicable in this state? There seems to have been, for a long time, the opinion that the rule of cy pres has no application in this state. Such *114 expressions are found in opinions of the Court. Doughten v. Vandever, 5 Del. Ch. 51; Murphy v. McBride, 14 Del.Ch. 457, 130 A. 283. However, in neither of these cases was the Court required to consider the cy pres rule or determine its applicability in this state. In the Doughten case it was determined that the bequest was neither for a charitable purpose nor in trust and therefore void. In the McBride case the corporation to which the trust was given had been extinct for some years prior to the death of the testator. The Court therefore held that, it not appearing from the will that the testator intended that his property should be applied to a general charitable purpose, but only for the benefit of the orphan girls who should be under the care and charge of the institution named therein, the legacy lapsed.
This question was first squarely faced in the case of Delaware Trust Co. v. Graham, Del.Ch., 61 A.2d 110. In that case the Court, at page 113 of 61 A.2d, said: "In principle, there therefore seems to be no good reason why judicial cy pres should not be applied in appropriate cases by this court. Nor do I find any reported case that squarely repudiates that rule".
With this opinion this Court concurs. As therein pointed out by Chancellor Harrington, the Court of Chancery in this state ordinarily has the same inherent jurisdiction as that of the English Court of Chancery at the time of our separation from that country. He further pointed out, in that opinion, that the English Chancellors had jurisdiction over the enforcement of gifts for charitable uses prior to the enactment of the Statute of Charitable Uses and that in this State charitable trusts are enforced by this Court under its ordinary equitable jurisdiction.
Generally speaking, the law favors charitable trusts, and they will not be declared void if they can by any possibility, consistent with law, be considered as good. Courts of Equity go to the length of their judicial power in sustaining such trusts. They are construed so as to give them effect, if possible, and to carry out the general intention of the donor when clearly manifested even if the particular form and manner pointed out by him cannot be followed: 10 Am.Jur. Sec. 102, p. 657. This attitude of the Courts is not too difficult to understand. In most cases their purpose is a worthy one and beneficial to many persons. Because of conditions of which the testator had no knowledge at the time of the execution of his will or later, or because of a change in conditions taking effect after the death of testator, without the application of the cy pres rule many charitable trusts would frequently lapse and the general charitable purpose of the testator would become ineffective.
This Court therefore concludes that, in appropriate cases, where there is a general charitable intent on the part of the testator and it becomes impossible without the application of the cy pres rule to carry such purpose into effect, the rule of judicial cy pres should apply.
Did testator indicate a general charitable purpose or can such be inferred?
The doctrine of cy pres will not apply unless there is a general charitable purpose: Delaware Trust Co. v. Graham, supra.
If a general charitable purpose is not shown, the doctrine of cy pres will not be applied: Murphy v. McBride, supra.
In order judicially to determine whether or not a charitable trust which for some reason cannot be carried out within the prescribed plan of the testator should be executed cy pres, the primary intention of the testator must be determined. If the testator showed in his will a general intention that his property should be applied in any event for a general charitable purpose, the will should be executed cy pres. If, on the other hand, no general charitable intent can be found in the will and, on the contrary, it is found that it was the testator's intention that his bequests should apply only in the particular manner or form specified in his will, the doctrine of cy pres will not apply: Restatement of Trusts, Sec. 399, Scott on Trusts, Sec. 399.
In applying the principle of cy pres the Court should not arbitrarily substitute its own judgment for the desire of the testator, or supply a fictional testamentary intent, *115 but, on the contrary, it should seek to ascertain and carry out, as nearly as possible, the testator's true intention. If the Court should assume that the particular purpose is apparently not an essential feature of testator's plan and that the testator would prefer that his property should be applied to a purpose as similar as possible to that stated by him rather than that the trusts which he attempted to create should fail altogether, the will should be executed cy pres. Restatement of Trusts, Sec. 399, Scott on Trusts, Sec. 399, Delaware Trust Co. v. Graham, supra.
Counsel for defendant contends that the doctrine of cy pres cannot apply in this case by reason of the fact that in a subsequent provision of the will testator provided "if the condition of the fund will allow worthy couples may be aided in the same manner in the admission to the Methodist Home of Philadelphia". It is contended by counsel that the words "worthy couples" do not refer to the method by which those admitted to the Home for Aged Women and the Home of Merciful Rest Society are selected and that the words "in the same manner" refer only to the aid given by the payment of one-half of the cost of admission to such homes, without any relation to the manner of the selection of such worthy couples.
The Court is of the opinion that the intention of the testator, in the use of these words, was more comprehensive than as stated by counsel for defendant.
In order to construe a provision in a will, it is the duty of the Court to examine the entire will, and, if possible, learn from the language used the real intent and meaning which the testator desired to convey: In re Dungan's Estate, Del.Super., 73 A.2d 776; Trustees of Protestant Episcopal Church v. Equitable Trust Co., 26 Del. Ch. 427, 24 A.2d 327.
The Court is of the opinion that the testator intended to provide, first, for the admission of worthy women of Union and Scott Churches to the Aged Homes; and, secondly, should the funds provided permit, for the admission of "worthy couples" under the same terms and conditions as provided for admissions to the Home for Aged Women and the Home of Merciful Rest Society. There are several reasons for such construction.
It will be noted, first, that the paragraph relating to the Philadelphia Home follows immediately after the paragraph creating the trusts for the Aged Homes, to which it refers. The trust paragraph relates entirely to admissions of members of Union and Scott Churches to the Aged Homes. With the exception of the bequest for the Home for Friendless and Destitute Children (which bequest is not here in dispute) every provision in the will is for the benefit of members of the Union and Scott Churches. The provision for admission to the Aged Homes is exclusively for the benefit of aged women. It follows, therefore, that the provision for admission to the Philadelphia Home merely provides for the admission of couples under the same conditions.
Moreover, the Court cannot entirely agree with the contention of counsel for defendant that the literal interpretation of the words "aided in the same manner" refers only to the amount of aid given by the payment of one-half the cost of admission. There is a presumption that words are used in their usual and probable meaning unless it appears from the context that some other meaning was intended: Page on Wills, (Lifetime Ed.), Sec. 933, p. 875. Therefore, in the absence of any such explanation in a will indicating that words were intended to be construed otherwise than as the word is written, words will be given their natural meaning: Cann v. Van Sant, 24 Del.Ch. 300, 11 A.2d 388, affirmed Frame v. Cann, 24 Del.Ch. 353, 16 A.2d 248.
Considering the context of the will and the fact that the paragraph relative to the Methodist Home of Philadelphia refers to the preceding residuary clause in the manner in which it does, the Court is of the opinion that a natural construction of the words "in the same manner" refers not only to the amount of aid to be given, but also to the method or procedure by which applicants to that home shall be selected. It is true that the words "in the *116 same manner" are generally construed to determine not who shall take but how the legatee shall take. In re Bowen's Estate, 139 Pa.Super. 523, 12 A.2d 507, 509; Sterling v. Ives, 78 Conn. 498, 62 A. 948, 954. They usually refer to procedure. DuPont v. Mills, 9 W.W.Harr. 42, 39 Del. 42, 196 A. 168, 119 A.L.R. 174. It is also true that in interpreting these words the method or procedure referred to will be followed as far as practical. Grand Junction Sugar Co. v. Fellows, 74 Colo. 242, 220 P. 992.
In the case of MacDonald v. Dunbar, Pa., 12 A. 553, 557, the principal gift of the testator was to one person for life with the remainder over to his issue then living. He devised other property to another person, to take "in the same manner". The Court held that such words will generally be construed to pass the property subject to the same limitations as those affecting the principal gift. In the case of Lewis v. Puxley, 16 Mees & W. 733, 743, the Court held that where a testator, after giving an estate to one son, and to his issue living at the time of the death of testator, directed that in default of his issue the estate should go to another son, the words "in like manner" imported a gift of the same estate with respect to the second son as was previously given to the first.
In this case the testator gave all of his residuary estate, in trust, for three different charities. Further, he provided for the aid of worthy couples who might wish to be admitted to the Methodist Home of Philadelphia. He further provided for the payment of $100 each to the "poor funds" of Union and Scott Churches.
All of these bequests would seem to indicate a general charitable purpose on the part of the testator. While it may be true, in some cases, that the giving of an entire estate to several charities does not necessarily show a general charitable intent, it is, nevertheless, a strong indication of such intent. Rhode Island Hospital Trust Co., Trustee v. Williams, 50 R.I. 385, 148 A. 189, 74 A.L.R. 664. Testator's general charitable purpose is further indicated by the provision for the appointment of successor churches in the event that either or both should cease to exist.
The law with reference to the application of the doctrine of cy pres is clearly set forth in Restatement of the Law of Trusts, Vol. 2, paragraph 399, p. 1208, as follows: "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the Court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor". See also Scott on Trusts, Vol. 3, Sec. 399, p. 2098; Delaware Trust Co. v. Graham, supra.
The trusts for the Aged Homes are ineffective only as to the balance remaining after compliance in full with all applications for admittance. Moreover, this is a condition which probably could not have been anticipated by the testator and which occurred after the trust became effective. Under these circumstances, Courts are less reluctant to find a general charitable purpose. Restatement of the Law of Trusts, Sec. 400, p. 1228; Vol. 3, Scott on Trusts, Sec. 400, p. 2119.
It is unnecessary to encumber this opinion with citations of the many cases upholding the above statements of the law; it is sufficient to say that the rule of cy pres was applied in this state in the case of Delaware Trust Co. v. Graham, supra, under circumstances, in some respects, similar. In that case testator bequeathed, in trust, the sum of One thousand dollars to the Foreign Missionary Society of St. John's M. E. Church of the Town of Seaford, to be used by said Society in furtherance of its general objects and purposes. In the year 1940 the Methodist Episcopal Church and two other churches merged and created one religious organization, known as "The Methodist Church". In the new organization there was created an organization known as "Woman's Society of Christian Service", the charitable purpose of which was at least similar to that of the old Woman's Foreign Missionary Society. In that case Chancellor Harrington concluded *117 that the general purpose of the testator was to aid foreign missionary work of the Methodist Episcopal Church, now a component part of the present Methodist Church, and that the selection of the Foreign Missionary Society of St. John's Church, as a means of carrying out that general purpose, was a matter of secondary importance. Chancellor Harrington further provided, applying the rule of cy pres, that the income from the fund in the hands of the trustee should be paid to the Woman's Division of Church Service of St. John's Methodist Church.
The Court therefore concludes that a reasonable construction of the will of the testator, in accordance with the authorities in this state and elsewhere, shows a general charitable purpose to aid the aged poor of Union and Scott Churches. The case is therefore one where the doctrine of cy pres is applicable.
A decree will be entered on notice, in accordance with this opinion.