121 A.2d 296 (1956)
The FIRST NATIONAL BANK AND TRUST COMPANY, of Milford, Delaware, a corporation of the United States of America, and Martin A. Glasmire, Trustees under the Will of Daniel Hirsch, deceased, Plaintiffs,
v.
The FIRST NATIONAL BANK AND TRUST COMPANY, of Milford, Delaware, a corporation of the United States of America, and Martin A. Glasmire, Trustees of the Daniel Hirsch Fund for the Needy Poor of the City of Milford, and The First National Bank and Trust Company, of Milford, Delaware, a corporation of the United States of America, and Martin A. Glasmire, Trustees of the Free Public Library Fund, established under the Will of Daniel Hirsch, deceased, and Joseph Donald Craven, Attorney General of the State of Delaware, Defendants.
Civil Action No. 80.
Court of Chancery of Delaware, Sussex.
March 20, 1956.
*297 James M. Tunnell, Jr., of Tunnell & Tunnell, Georgetown, for plaintiffs.
James L. Latchum of Berl, Potter & Anderson, Wilmington, for defendants, First Nat. Bank & Trust Co. of Milford, Delaware and Martin A. Glasmire, trustees of the Free Public Library Fund.
H. James Conaway, Jr., of Morris, James, Hitchens & Williams, Wilmington, for defendants, First Nat. Bank & Trust Co. of Milford, Delaware and Martin A. Glasmire, trustees of the Daniel Hirsch Fund for the Needy Poor of the City of Milford.
Herbert L. Cobin, Chief Deputy Atty. Gen., for the Atty. Gen.
SEITZ, Chancellor.
Plaintiffs seek instructions as to whether a portion of the corpus of one testamentary trust ("Needy Poor") can be transferred under the cy pres doctrine to assist in effectuating the testator's intention with respect to another trust ("Library").
Plaintiffs are co-trustees under the will of Daniel Hirsch, deceased. They are also named as defendants in their capacities as co-trustees under the testamentary trusts involved in this litigation[1]. Because public charities were involved, the Attorney General was made a party defendant. His office took no active part in the case.
Basically we are dealing with the application of the cy pres doctrine. In support of his contention that as a matter of law, regardless of the factual proof, the alleged excess corpus in the Needy Poor Trust cannot under the cy pres doctrine be transferred to the Library Trust, the attorney for the Needy Poor Trust has moved for judgment on the pleadings. This is the decision thereon.
*298 By making his motion for judgment the attorney for the Needy Poor Trust necessarily accepts, for present purposes, the truth of the material factual allegations. Let us see what they show. Daniel Hirsch of Milford, Delaware died September 14, 1940, leaving a last will dated September 10, 1935. By his probated will he first provided for a number of general and specific legacies, devises and bequests. Under Item 13 the residue of his estate was left in trust, the income to be paid to his widow and brother and to the survivor of them. Upon the death of the survivor the trust corpus was to be divided into five separate trust funds for different charitable purposes. The first three such trusts were substantially as follows:
1. $25,000 for "The Daniel Hirsch Endowment Fund". The income was to be paid to the Milford Hospital to be used for the care of indigent persons residing within a five mile radius of the hospital.
2. $25,000 for "The Mary E. Hirsch Endowment Fund". The income was to be paid to the Presbyterian Church of Milford for maintenance, etc.
3. $10,000 for "The Daniel Hirsch Scholarship Fund". The income was to be used for college scholarships for two students of the Milford High School.
After providing for the three trusts mentioned, the testator created the so-called Library and Needy Poor Trusts. The language creating such trusts follows:
"The Further sum of Twenty-five Thousand Dollars ($25,000.00) thereof to be set aside as a Free Public Library Fund. Fifteen Thousand Dollars ($15,000.00) of said fund is to be used for the purpose of the purchase of a suitable site for free public library building in the City of Milford aforesaid, and the erection thereon of a library building to be known as "The Blanch C. Hirsch Free Public Library". The Trustees hereinbefore named shall have full power and authority to select such site and to erect a library building thereon, but it is my wish that I. Dolphus Short, one of said Trustees, shall have the controlling voice both in the selection of the site and the erection of the building. And it is my suggestion and wish that the said building shall be of domestic brick, and that the plans for such building shall be prepared by a competent architect.
"(e) The remaining Ten Thousand Dollars ($10,000.00) of said fund I direct to be invested by my said Trustees and kept invested in such securities not necessarily legal, as shall in the judgment and discretion of my Trustees, appear good, safe and profitable, and the income therefrom to be used for the general upkeep and maintenance of said library, but not for the purchase of books nor for salary of librarians. Should not the necessary and proper steps be taken for the erection of the above named public library building within one year from the date of the death of the survivor of my said wife and brother, the said provisions for such library building and its upkeep and maintenance shall become null and void and the sums so set apart and provided for that purpose shall become a part of my residuary estate and treated as such.
"Item 14. After the payment of the several legacies and the setting up of the various trusts herein provided for, the rest and residue of my estate of whatever it may consist shall be turned over to the said Trustees provided for in the second paragraph of Item 13 to be by them invested, reinvested and kept invested in such securities, not necessarily legal, as shall in their judgment appear good, safe and profitable and the net income therefrom paid over semi-annually to the societies or organizations that look after and administer to the needy poor of the City of Milford, and said Trustees shall have entire control in the selection of the societies or organizations to which such income is to be paid."
*299 The estate was settled on January 1, 1942 at which time the trustees received assets valued at $117,275.69. At the death of the surviving life beneficiary on February 18, 1954, the market value of the assets to be distributed to the five trusts had increased to the total of $197,385.26. The Needy Poor Trust received $112,385.26.
It is alleged that because of the changed economic conditions which occurred following the death of the testator the library trustees now find it impossible to carry out the general intention of the testator to acquire a site, erect a library building and maintain it for $25,000. They allege that these things can be done for $75,000.
The cross complaint of the Library Trustees specifically alleges that "the corpus of the trust for the Needy Poor of the City of Milford, under the present circumstances, is excessive for the charitable purpose for which it was intended". This is allegedly so because of an increase in public relief since the testator's death. These allegations are denied by the Needy Poor Trustees. I have assumed the alleged excess for the purpose of disposing of the contention of the Needy Poor Trustees that if there is an excess it nevertheless cannot go to the Library Trust. However, it will be noted that the second ground of my decision requires a different treatment of this allegation.
Milford is without a public library building, the present library being housed in two rooms on the second floor of the Community Building. It is administered by library commissioners appointed by the resident judge and financed by a small state appropriation and a real estate tax levied within the Milford School District.
On these alleged facts and on the present motion for judgment on the pleadings by the trustees of the Needy Poor Trust, the question first presented is whether the alleged excess of corpus in the Needy Poor Trust could under any rule of law be transferred to the Library Trust. I pose the issue in this manner because I assume no ruling on cy pres is sought except in connection with the diversion of the funds to the Library Trust.
Assuming, as alleged, that the Needy Poor Trust has more than sufficient assets to effectuate the purposes of that trust, may any portion of the excess be transferred to the library trust under the doctrine of equitable cy pres? The attorney for the Needy Poor Trust says that it cannot because any excess under the cy pres doctrine must be applied in other ways to aid the poor and indigent rather than in favor of a trust which, while charitable, has no direct connection with the poor and indigent.
The doctrine of cy pres[2] as defined in Restatement, Trusts, § 399 (1935) reads as follows:
"If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the Court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor."
The pleadings allege an excess in the Needy Poor Trust. Therefore, as noted, we must assume on the present motion that there are proceeds to which the cy pres doctrine is applicable, it being conceded that a general charitable intent appears. 3 Scott on Trusts, § 400. The Court must "swallow hard" to make such an assumption since I cannot believe Milford is an exception to the Biblical prophesy that we will always have the poor with us.
The attorney for the Needy Poor Trustees contends that there are distinct and separate categories of charities, i. e., religious, educational, health, governmental, and for *300 the poor and needy. Each has its own particular purpose, says their attorney, and the doctrine of cy pres can never be invoked to divert any part of a trust fund from one particular charitable category to another separate and different charitable category. As will be noted, I do not believe this case requires a ruling on this general proposition.
The attorney for the Library Trust argues that the testator's charitable intention as evidenced by the five trusts was to aid the people in or near Milford and that a transfer from the Needy Poor Trust to the Library Trust would be in furtherance of that general intention.
All parties concede that there is present the necessary general charitable intent to support the application of cy pres. But, contrary to what counsel for the Library Trust seems to believe, in applying the doctrine to the alleged excess funds the very words of the doctrine require the Court to devote such proceeds to a purpose which is related as nearly as possible to that found in the trust whose proceeds are subject to cy pres. Compare Delaware Trust v. Graham, 30 Del.Ch. 330, 61 A.2d 110; Union Methodist Episcopal Church v. Equitable Trust Co., 32 Del.Ch. 197, 83 A.2d 111. A less restricted application of this salutary doctrine would be an obvious invitation to thwart the testator's intention. Indeed, the "as near as" requirement would be meaningless if the Court were to be restricted only by the general charitable purpose test. This is particularly true in a case such as this where we are dealing only with an alleged excess in a valid charitable trust with a stated purpose of broad import.
The allegations of the complaint and the argument of counsel for the Library Trust emphasize that the Library Trust needs more money. However, it must be evident that the alleged excess in the Needy Poor Trust could not be transferred to the Library Trust merely because of a deficiency in the Library Trust. Unless the Library Trust comes within the "as near as" test, when applied to the purpose of the Needy Poor Trust, the alleged excess could in no event be transferred to the Library Trust.
It is important to examine the allegation covering the alleged excess as it appears in the cross claim of the Library Trustees. It is alleged, in effect, that there is more corpus than is needed to produce sufficient income to accomplish the charitable purpose of the Needy Poor Trust. The purpose of the trust is to assist organizations and societies which look after and administer to the Needy Poor of the City of Milford. In view of the allegation we must assume that these entities do not need what, judicially noticed, would amount to no more than $5,000 a year.
If we assume that the designated societies and organizations could not fairly use about $5,000 per year, does that mean that under the cy pres doctrine the amount of corpus producing the excess (or a part thereof) could go into the Library Trust? I regret to say that it does not. I say this because I believe the cy pres doctrine would require that the excess be used for some other form of aid to the needy poor of Milford under a judicially approved plan. The Court will take judicial notice of the fact that there must be needs among the needy poor of Milford which would far exceed the amount of any possible excess which might remain after satisfying the needs of such organizations and societies as the trustees might select. Thus, for example, consider the need for hospital services for the needy poor. One can imagine many other uses which would directly benefit the needy poor of Milford. They would far exceed any possible excess and would of necessity be given priority over the Library Trust.
The Trustees of the Library Trust suggest that the library would perhaps be principally for the benefit of the poor, it being assumed that other people would be more likely to buy books. Implicit in this argument is the concession that the Library is in fact for other than the needy poor of Milford. Indeed, no restriction on the eligible users is found in the provisions of the *301 will creating the Library Trust. Thus, it may fairly be said that if funds were to be transferred from the Needy Poor Trust to the Library Trust they would be directly benefiting at least some people who were not in the category "needy poor". This is an added reason why any excess corpus would under cy pres go to organizations and uses more closely identified with service to the needy poor than the Library Trust.
There is a second reason why the cy pres doctrine cannot be applied here to divert a portion of the corpus of the Needy Poor Trust to the Library Trust. The income from this trust first became available to the Needy Poor of Milford on February 18, 1954. We have here a perpetual trust for a use which would appear to be insatiable, viz., the needy poor. On such a short experience with need and in the light of the charitable purpose, this Court would have to conclude as a matter of law that a sufficient time had not elapsed to warrant any conclusion with respect to "excess" proceeds. I say this despite the allegation of "excess". Certainly the question of "excess" in this type of trust is not to be determined on a year by year basis. Otherwise, a diversion of corpus in one year might mean that the corpus would be insufficient for its purpose in the next year. I conclude therefore that any question of the application of the cy pres doctrine here is premature.
In reaching my conclusion concerning cy pres I do not pass on the right of the Trustees of the Needy Poor Trust to select the Library Trust as an income recipient on the theory that such trust in part helps to minister to the needy poor of Milford.
I therefore conclude as a matter of law that no portion of any alleged excess corpus in the Needy Poor Trust could be transferred to the Library Trust under the cy pres doctrine. It follows that as to this point the motion of the trustees of the Needy Poor for judgment on the pleadings must be granted.
I next consider the contention of the Needy Poor Trustees that because of an admitted insufficiency of funds (in view of my ruling above) the Library Trust has failed and therefore the $25,000 in that trust passes to the Needy Poor Trust under the provisions of the will. The will does provide that the Library Trust provision should become null and void and the fund should pass to the Needy Poor Trust if "the necessary and proper steps" are not "taken for the erection" of a library within one year from the date of the death of the surviving life income beneficiary. This Court has previously ruled that when, within the one year period, the Library Trustees employed an architect, as suggested by the testator, they took steps of a type sufficient to meet the "necessary and proper" requirement of the will in time to prevent the trust from becoming null and void.
I do not believe the null and void language applies to a failure beyond the one year date. A partial failure of purpose occurring after the one year date is therefore not controlled by the language of the will. If, as now appears, there is insufficient money in the Library Trust to carry out the provisions of the will with respect to such trust, the fund does not under the provisions of the will and under present circumstances pass to the Needy Poor Trust. Rather, because a general charitable purpose clearly appears, it must be devoted under the cy pres doctrine in a way that will be in keeping with the testator's intention. See Fisch, The Cy Pres Doctrine In The United States, § 6.02(d). The Court will act at an appropriate time to consider a plan which will be in keeping with this ruling. Insofar as the motion of the Needy Poor Trustees for judgment on the pleadings seeks a judgment transferring the Library Trust proceeds to the Needy Poor Trust it will be denied.
Order on notice.
NOTES
[1] Because the trustees of the Needy Poor and the Library Trusts were the same, the Court appointed attorneys to represent each of such trustees.
[2] Said to come from the Norman French "cy pres comme possible" meaning as near as possible.