UNION METHODIST EPISCOPAL CHURCH, of Wilmington, Delaware, a religious corporation of the State of Delaware,
Plaintiff,

*vs.*

EQUITABLE SECURITY TRUST COMPANY, a corporation of the State of Delaware, and JOSEPH DONALD CRAVEN, Attorney General of the State of Delaware,
Defendants.

*New Castle, January 12, 1962.*

*Samuel R. Russell, Jr.,* of Morford, Young & Conaway, Wilmington, for plaintiff.

*Max S. Bell, Jr.,* of Richards, Layton & Finger, Wilmington, for defendant Equitable Security Trust Co.

MARVEL, Vice Chancellor: Union Methodist Episcopal Church of Wilmington for itself and as successor [1] to Scott Methodist Episcopal Church also of Wilmington brings this suit for instructions as to its rights and duties under the terms of a trust created under the last will and testament of Henry C. English who died in January, 1921.

The exact language of the trust in question appears in the opinion of this Court in an earlier suit for instructions brought by plaintiff and Scott Church and reported in 32 *Del.Ch.* 197, 83 *A.2d* 111. In essence, however, the trust in question provides for the distribution of the net income therefrom arising for three basic purposes, the testator directing that one third of such income "* * * be used in securing admission to the Home for Aged Women * * *" of elderly women, "* * * one third to be used in like manner in securing admission (of elderly women) to the Home of Merciful Rest Society * * *", said assistance to take the form of payment of one-half the cost of admission of such persons to the homes designated in the will. The women chosen to receive such aid were to be selected by the official boards of Union and Scott Churches. The will went on to state "* * * . The remaining one third of the net income I direct shall be paid to the Trustees of the Home for Friendless and Destitute Children * * *". Finally, the will provides that "* * * If application for admission to the various Homes herein named should

---

1. Scott Methodist Church having gone out of existence after the inception of this action, the active ministers of the Methodist Church in Wilmington met on September 8, 1960 and by unanimous vote selected Union Church as the successor to Scott Church pursuant to directions outlined in the will of Henry C. English. On December 7, 1960, an order was entered amending this Court's order of September 7, 1951, hereinafter alluded to, and otherwise making adjustments in the administration of the English trust for the purpose of meeting changed conditions.

cease for any one year, I direct that one hundred dollars be paid into the 'poor funds' of each of the two churches * * *".

Because there were few applications for admission to the homes for the aged mentioned in the testator's will and apparently few vacancies in such homes during the period from 1926 when the trust was set up to the end of 1950, a surplus of income in the trust totalling $33,264.41 had accrued by the latter date, said amount being all the income then accrued in the part of the trust here involved except for those amounts paid out for the payment of admission costs to the designated homes, the payment of nominal sums of Christmas money to persons so admitted, and the sum of $100 annually paid to each church in those years during which no admission moneys were paid out. Accordingly, as noted earlier, both churches named in the testator's will brought suit in this Court for instructions as to how future income should be treated. They alleged the existence of a substantial amount of surplus income in the trust, as above indicated, and pointed out that there were presently no applicants from either church seeking admission to a home for the aged but that on the other hand each church had its aged needy. The complaint went on to allege that fruitless demand that a more liberal plan be adopted for distributing income in the future had been made on the trustee defendant and prayed that all future income derived from the original corpus of the English trust and from the two virtually unused "helping funds" set up by the trustee "* * * not required to fulfill the provisions of the decedent's will, be distributed annually * * * for the purpose of providing charitable assistance to needy members * * *" of Union and Scott Churches "* * * with preference to be given to the aged."

The trustee's answer having been filed and briefs submitted, then Vice Chancellor Bramhall in conformity with his opinion of August 17, 1951, *supra,* in which he applied the doctrine of *cy pres,* directed that future income from the original corpus of the English trust and from the two helping funds be utilized "* * * by the trustees of said Churches for providing charitable assistance to the aged poor who

have been worthy members of said Churches for five years or more * * *", said payments to be made in the month of January of each calendar year. Pursuant to the terms of such order and as a result of the dissolution of Scott Church the trustees of Union Church are now receiving from the English trust for distribution among the aged poor of the parish some $3,000 per annum.

In late 1956 or early 1957, however, a corporation was formed under authority of the Peninsula Conference of the Methodist Church for the purpose of creating and maintaining homes for aged members of the Methodist Church residing in the Del-Mar-Va peninsula and set out to construct a Methodist Country House northwest of Wilmington. In casting about for funds for such project plaintiff was caused by those charged with the task of raising the moneys needed for the construction of a large home for the aged to make demand on the trustee and to ask in its amended complaint for payment to it of all accumulated surplus income accrued in the English trust prior to 1951 as well as all future income of the English trust, so that plaintiff could in turn donate said funds towards the construction and maintenance of such proposed new home for the aged. The complaint goes on to allege that were the trustee to be so instructed such payment would be "* * * as consistent with the charitable intent of the testator as were the instructions given to the Trustee by this Court in its order dated September 7, 1951 * * *", and that in return for such funds the Country House would agree to set aside a certain number of beds for the aged of the churches in question for a number of years to come.

The trustee having answered this new complaint and briefs having been filed, this is the decision on plaintiff's motion for summary judgment directing the trustee to pay over to plaintiff the moneys prayed for in the complaint for the purpose there recited.

Plaintiff's motion is supported by affidavits which aver that if the accumulated income in the English trust presently held by defendant, an amount now in excess of $59,000, is directed to be paid

over to the Country House, plaintiff proposes to make an agreement with the latter which would obligate it to reserve four rooms for four aged persons of Union Church for life. On the basis of certain assumptions, including a basic one that each person so admitted would live ten years, plaintiff calculates that the care and maintenance so furnished to four persons would have an actual value of $110,000.

In reply, defendant contends that to the extent necessary to accomplish the basic purpose expressed in the English will, the doctrine of *cy pres* has already been applied by this Court when it dealt in 1951 with the 1926-1951 surplus income which plaintiff seeks for the Country House. Alternatively, it is submitted that if such order of September 7, 1951 did not deliberately concern itself with the future use of the accrued moneys sought in this action, plaintiff misconceives the nature of the doctrine of *cy pres,* defendant in effect arguing that plaintiff's proposal does not meet the tests which govern the applicability of *cy pres*.

The Restatement of the Law, Trusts, § 399, defines *cy pres* as follows :

> "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the Court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor."

No claim is made by plaintiff that the sum of approximately $3,000 of annual trust income now available for the aged poor of Union Church is not and cannot be used for the purpose set forth in the 1951 order. Thus the question arises as to what legal basis exists for altering a properly functioning order of this Court in order to accomplish the worthy purpose advanced in plaintiff's complaint.

Having examined the trustee's records concerning distribution of trust moneys since September 1951, I cannot agree with plaintiff's contention that the trust funds considered in the 1951 order (which was based on a finding that the English will evidenced a general charitable purpose to aid the poor of two designated parishes) are not being "utilized completely" for the basic purpose for which they were intended, namely for the benefit of worthy members of Union Methodist Church, such church being the survivor of the two parishes designated in testator's will. There are clearly no moneys presently held in the English trust for which no use exists, and accordingly no excess to which *cy pres* might be appropriately applied. In short, nothing has transpired in the last decade to make the 1951 order incapable of operation. The fact that plaintiff believes that application of the accumulated 1926-1951 trust income to the cost of constructing the home described in the complaint and supporting affidavits (a purpose not mentioned in the English will) in return for the boarding of four selected parishioners of Union Church is a better use of such moneys than that authorized in the 1951 order is not, in my opinion, a valid reason for disturbing it. As observed by the Chancellor in *First National Bank & Trust Co. v. First National Bank*, 35 *Del.Ch.* 449, 121 *A.2d* 296, no doubt we shall always have the poor with us, and I decline to permit the diversion of moneys from the purpose intended by testator, namely for direct and continuing aid to the aged poor of what is now one Methodist church and to approve their application to the cost of constructing a home for aged persons in general.

Were the Country House clearly an institution for the aged poor, the application of the salutary principle of *cy pres* would no doubt result in the inclusion of such home as one into which admission of the aged poor of Union Church might be facilitated by English trust funds. However, the Country House is apparently not such an institution and in any event such relief is not prayed for.

To sum up, I decline to permit the diversion of the 1926-1951 income accumulated in the English trust from the purposes approved

by this Court in its order of September 1951 and its application to the building project sought to be benefited by plaintiff. Plaintiff's motion for summary judgment must be denied and the trustee will be ordered to continue to deal with the property held by it in the English trust as directed in this Court's final order in Civil Action 231.

Order on notice.